**IN RE G.C.**

[230 N.C. App. 511 (2013)]

IN THE MATTER OF G.C.

No. COA13-152

Filed 19 November 2013

1. **Appeal and Error—juvenile adjudication—right of appeal— standard of review**

    Under N.C.G.S. § 7B-2602, a juvenile may appeal a final district court order. Here, the juvenile argued that the trial court failed to follow a statutory mandate, which is a question of law to be reviewed *de novo*.

2. **Appeal and Error—issue not timely raised—writ of certiorari**

    The Court of Appeals exercised its discretion to allow review of the question of whether the trial court provided a factual basis for denying a juvenile's release pending appeal. The issue was not timely raised and the juvenile would lose the ability to appeal if the writ of *certiorari* was not granted.

3. **Juveniles—adjudication—release pending appeal denied— written reasons not provided**

    An order denying a juvenile's release pending appeal was vacated and remanded where the trial court did not provide a written statement of compelling reasons for the denial, as required by N.C.G.S. § 7B-2605.

4. **Juveniles—disposition—written findings**

    The trial court did not err in a juvenile proceeding by making a Level III disposition without the required written findings. The trial judge's later written order provided an ample factual basis for the dispositional decision that restated the findings made after the hearings and addressed the factors laid out in N.C.G.S. § 7B-2501(c).

5. **Juveniles—adjudication—responsible for offense—delineation between hearings**

    There was no error in adjudicating a juvenile responsible for an offense and committing him to a Youth Development Center without first holding adjudicatory and dispositional hearings. Although the trial court did not clearly state that he was moving from the transfer hearing to the adjudicatory hearing, or from the adjudicatory hearing to the dispositional hearing, the juvenile's counsel was provided with several opportunities to present evidence and took advantage of those opportunities each time they arose.

**IN RE G.C.**

[230 N.C. App. 511 (2013)]

Appeal by Juvenile G.C. from a disposition and commitment order entered on 17 September 2012 by Judge John W. Dickson in Cumberland County District Court. Heard in the Court of Appeals 12 September 2013.

*Attorney General Roy Cooper, by Special Deputy Attorney General Gerald K. Robbins, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Jon H. Hunt, for Juvenile-Appellant*

HUNTER, JR., Robert N., Judge.

Appellant G.C. ("Henry"),[1] age thirteen, was adjudicated a delinquent on 17 September 2012. Henry appealed the adjudication order on 5 October 2012. Subsequently, Henry filed a petition for a writ of *certiorari* with this Court seeking review of a later 10 April 2013 order denying Henry release pending his initial appeal. After careful review, this Court affirms the decision of the trial court adjudicating Henry delinquent. We vacate the order denying Henry release pending appeal and remand this matter to the trial court for further proceedings.

## I. Facts & Procedural History

On 26 January 2012, a Cumberland County Juvenile Court Counselor filed juvenile petitions regarding Henry. The petitions alleged Henry was delinquent as a result of committing two counts of first-degree sexual offense under N.C. Gen. Stat. § 14-27.4(a)(2) (2011) and two counts of indecent liberties between children under N.C. Gen. Stat. § 14-202.2 (2011). The petitions alleged that the offenses occurred between 1 January 2009 and 7 March 2010. Henry appeared in Cumberland County District Court for his first appearance on 2 February 2012. Counsel was assigned to Henry and an order was entered to conduct a probable cause hearing on 22 March 2012. On March 22nd, 23rd, and 29th, Cumberland County District Court Judge John W. Dickson held a probable cause hearing relating to the petitions. The testimony presented tended to show the following facts.

In 2010 Henry, then 13 years old, lived in Fayetteville with his mother ("Mary"), stepfather ("John"), older sister ("Anne"), and younger brother ("Gary"). M.S. ("Linda"), then 6 years old, lived across the street from Henry. Linda testified that she often visited Henry's home to play

---

1. Pseudonyms are used to conceal the identities of the juveniles and their parents involved in this case.

IN RE G.C.

[230 N.C. App. 511 (2013)]

with Anne and Gary, that she was "best friends" with Gary, and that she considered Anne to be like an older sister. Linda stated that she sometimes played videogames with Henry and Gary in an upstairs bedroom or "bonus room" shared by the brothers.

Linda stated in court that she was touched sexually by Henry "multiple times," specifically stating that Henry touched her "private parts" and that Henry touched her vagina with his hands and placed his penis on the exterior of her vagina. Linda testified that the sexual contacts between the two of them began when she was in first grade. Linda also did not tell anyone about Henry's actions until "when I got sick and tired of it, I told his mother and I told his father."

John testified that on 7 March 2010, he was talking with Linda about a "Japanese garden" Linda wanted in her family's back yard. While they were talking, John testified that Linda began scratching her privates, that he asked her to stop, and that he told Linda touching her privates was inappropriate behavior. Linda continued the conversation, and John testified that Linda then said that Henry needed to cut his fingernails, because Henry scratched her private areas. John then asked his wife Mary to speak with Linda, and John told his wife Mary immediately about Linda's statement. Mary took Linda aside to talk with her, and then Mary brought Linda home to Linda's mother ("Gail"). Mary told Gail about Linda's statements, and on 8 March 2010 Gail filed a report about these events with the Fayetteville Police Department.

Detective Steve Carr ("Detective Carr"), a member of the youth services unit of the Fayetteville Police Department, responded to the report shortly thereafter. Detective Carr arranged for a doctor's examination and a clinical interview at the Child Advocacy Center. On 11 March 2010, Janette Rogers ("Ms. Rogers"), a forensic interviewer, interviewed Linda; she did so again on 29 March 2010. During the first interview, Linda told Ms. Rogers that Henry touched her privates, that he stuck his fingernails in her privates, and that the sexual contacts occurred "about twenty or thirty times." Ms. Rogers also testified that typically a second interview doesn't take place unless there are new allegations raised or the need for multiple sessions due to a large volume of information. Ms. Rogers testified that Detective Carr requested the second interview because new allegations may have arisen. During the second interview with Ms. Rogers, Linda stated that Henry's penis touched her vagina.

Later, Linda was given a comprehensive medical examination by Dr. Howard Laughlin ("Dr. Laughlin"), a pediatrician at the Southern Regional Area Health Education Center in Fayetteville, at the request of

Detective Carr. Dr. Laughlin testified that when he asked Linda if there was anything she was concerned about, she discussed Henry putting his hands in her pants and noted that it had happened over twelve times. Dr. Laughlin also said Linda stated "[t]hat all of the occasions had been essentially the same, with the exception of one time she told me about, after she'd gotten back from Minnesota, that [Henry] had laid on top of her and had kissed her on the mouth." After discussing an anatomy diagram with Linda, Dr. Laughlin testified that Linda said she felt Henry's penis touching her privates through her clothes. Dr. Laughlin also performed a physical exam on Linda, noting no anal or vaginal injuries to Linda. Dr. Laughlin stated that he believed Linda exhibited characteristics consistent with those of a sexually abused child. Based on his observations, Dr. Laughlin recommended that Linda see a counselor to help Linda resolve her issues and to help her "feel safe." Dr. Laughlin also recommended that Mary not allow Linda to have any further contact with Henry.

Thereafter Linda began to see Judith Rose ("Ms. Rose"), a licensed clinical social worker and psychotherapist. Ms. Rose began treating Linda for post-traumatic stress disorder and possible sexual abuse. Ms. Rose treated Linda for over a year, and during treatment sessions, Linda identified Henry as a person who sexually abused her. Specifically, Ms. Rose testified that Linda told her about how "sharp his fingernails were, and that they scraped the inside of her vagina when they went inside of her, and that she felt that he needed his fingernails cut. Beyond that, we didn't go into very specific details of the abuse[.]" Ms. Rose stated that she did not "go into details" with Linda because she knew the case would be heard in court and did not want "to be seen as influencing testimony or leading the patient in any way, so [she] mainly just focused on symptoms specifically, and how to deal with those."

Henry did not testify during the proceedings. The record also does not show medical evidence of penetration. After hearing the evidence, the trial court entered a 16 April 2012 Juvenile Order finding probable cause to believe Henry had committed first degree sexual offense. Judge Dickson also issued a Juvenile Adjudication Order, adjudicating Henry delinquent for violating N.C. Gen. Stat. § 14-202.2 (2011), concerning indecent liberties between children.

On 17 September 2012, a transfer hearing was conducted pursuant to N.C. Gen. Stat. § 7B-2203 (2011) to determine whether the case should be removed to superior court. The district court denied the motion and retained jurisdiction in the case. Immediately upon the conclusion of the transfer hearing, the district court stated:

IN RE G.C.

[230 N.C. App. 511 (2013)]

[The] Court previously having heard evidence, found probable cause to believe these offenses were committed, further finds beyond a reasonable doubt that they were committed and that the juvenile was guilty of the charges and is a delinquent juvenile as defined by statute.

The court then immediately began its disposition proceeding:

The juvenile, having no prior delinquency points due to the nature of the offense, Level II or III may be imposed. Both charges are to be consolidated for one judgment. The Court finds that it is in the best interest of both the juvenile and people of this state that a Level III be imposed. He is ordered placed in the custody of the Youth Development Center for a period of not less than six months, nor greater than his 21st birthday. He is to receive all treatment recommended. Ms. Cottle's report is to accompany him to YDC so that YDC may follow the recommendations that she has made.

## II. Jurisdiction & Standard of Review

There are three issues on appeal. First, Henry requests the issuance of a writ of *certiorari* for the purpose of attaining a determination concerning whether the trial court erred by declining to release Henry during the appellate process. Second, Henry argues the trial court erred by imposing a Level III disposition without making the necessary findings of fact to support that disposition. Third, Henry argues the trial court erred by adjudicating Henry responsible for the charges against him and sentencing Henry to a youth development center without first holding a separate adjudicatory and dispositional hearing.

While this appeal was pending, Henry filed a petition for writ of *certiorari* asking this Court to address an issue not presented in his brief. Rule 21(a)(1) of our Rules of Appellate Procedure provides that "[a] writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action."

[1] The two issues addressed in Henry's brief are reviewed *de novo*. Under N.C. Gen. Stat. § 7B-2602 (2011), a juvenile is entitled to appeal a final order of a district court. N.C. Gen. Stat. § 7B-2604 (2011) allows Henry or his parent to bring the appeal. Henry argues that the trial court failed to follow a statutory mandate; thus, Henry's right of appeal is

IN RE G.C.

[230 N.C. App. 511 (2013)]

preserved and the failure to follow a statutory mandate is a question of law. *State v. Ashe*, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985).

"Conclusions of law are reviewed de novo and are subject to full review." *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011); *see also Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004) ("Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal."). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (citations and quotation marks omitted).

## III. Analysis

### A. Writ of Certiorari and Release Pending Appeal

[2] While this appeal was pending, Henry filed a petition for the issuance of a writ of *certiorari* requesting review of whether the trial court erred in denying Henry's request for release pending appeal without providing any factual basis for that decision. Henry argues that the trial court did not provide a factual basis for denying his release. We agree.

Henry requests the issuance of the writ because the issue is not raised in his initial appeal, and, in the absence of the issuance of a writ, he would lose the ability to appeal because notice was not timely filed. Rule 21(a)(1) provides this Court with the authority to review the merits of an appeal via writ even when the appeal is filed in an untimely manner. *Anderson v. Hollifield*, 345 N.C. 480, 482, 480 S.E.2d 661, 663 (1997). Even though this issue was not timely raised, this Court exercises its discretion to review the issue under Rules 2 and 21 of the North Carolina Rules of Appellate Procedure. N.C. R. App. P. 2, 21.

[3] N.C. Gen. Stat § 7B-2605 (2011) requires the release of a juvenile pending appeal, unless written compelling reasons are provided by the trial court. Specifically, § 7B-2605 provides:

> Pending disposition of an appeal, the release of the juvenile, with or without conditions, should issue in every case unless the court orders otherwise. For compelling reasons which must be stated in writing, the court may enter a temporary order affecting the custody or placement of the juvenile as the court finds to be in the best interests of the juvenile or the State.

**IN RE G.C.**

[230 N.C. App. 511 (2013)]

Typically, trial court orders denying release pending appeal contain a number of facts stating why a juvenile should not be released. *See, e.g., In re Lineberry,* 154 N.C. App. 246, 252–53, 572 S.E.2d 229, 234 (2002), *cert. denied,* 356 N.C. 672, 577 S.E.2d 624 (2003) (noting the trial court's finding, for example, that the juvenile was not closely supervised by his parents). Here, compelling facts were not found.

On 16 April 2012, Judge Dickson found probable cause that Henry committed the first-degree sexual offense and filed a written adjudication order the same day. During and following Henry's adjudication and disposition hearings, there were no findings of fact or conclusions of law stating explicitly why release pending appeal should be denied. On 5 October 2012, Henry gave written notice of appeal. On 8 October 2012, Judge Dickson executed the Appellate Entries form, which found Henry to be indigent and appointed the Appellate Defender to represent him. The Appellate Entries form executed by the trial court did not provide for Henry's release or state compelling reasons why Henry's release was denied; instead, where these items should have been listed on the form, "N/A" was written in the space provided.

On 10 April 2013, Henry appeared to address Judge Dickson's Appellate Entries before Judge Edward Pone. Judge Pone denied release and ruled orally that he would not to hold a hearing on the matter, noting that Judge Dickson ordered that Henry be committed to a Youth Development Center. Judge Pone issued a 10 April 2013 order that found (1) Henry was committed to a Youth Development Center; (2) release of Henry was not appropriate; (3) the matter is being appealed; and (4) "On the Appellate Entries number 2 or 3 need to be amended, it reflects N/A beside both and neither box is checked." Judge Pone also issued a revised Appellate Entries form, in which release pending appeal was denied and on which Judge Pone wrote "[s]ee order entered April 10, 2013 and filed April 30, 2013."

In sum, when denying Henry's release pending appeal, the trial court made four findings of fact without conducting a separate hearing to determine whether compelling reasons existed to deny release. The order's findings of fact stated only that Henry was committed and that release was not appropriate. This is in contrast to *Lineberry,* in which the trial court held a hearing concerning the juvenile's release and found:

> 5. Three sex offender evaluations, attached and incorporated herein by reference, were received and considered;
>
> 6. The juvenile has consistently expressed entrenched denial which diminishes his amenability to treatment;

7.   To date the juvenile has not participated in any sex offender therapy;

. . . .

9.   The felonious Second Degree Sex Offense and misdemeanor Indecent Liberties Between Minors was committed in an aggressive, premeditated manner;

10. The juvenile is frequently in the presence of other juveniles that have not been made aware of his adjudication for a sex offense;

11. The juvenile has not been consistently closely supervised by his parents or other adults that have been made aware of the risks for re-offending; and,

12. The juvenile is currently receiving sex offender specific treatment at the Swannanoa Valley Youth Development Center Juvenile Evaluation Center.

Based on these facts, the trial court concluded that "[c]ompelling reasons exist and it is in the best interest of the juvenile and the State that the juvenile remain in the custody of the Youth Development Center pending appeal."

154 N.C. App. At 252, 572 S.E.2d at 234 (alterations in original). Rather, the facts in the present case more closely resemble those in *In re J.J.*, where this Court remanded the case to the trial court due to insufficient findings of fact setting out compelling reasons for denying release:

"In the present case, at the close of the 14 December 2010 hearing, counsel for the juvenile asked the court to grant release of the juvenile pending his appeal. The trial court denied release of the juvenile pending appeal in open court. *In the Appellate Entries, the trial court denoted neither that the juvenile would be released pending appeal nor that the juvenile's release is denied. Neither box is checked on the form. In addition, in the space provided on the Appellate Entries form for listing compelling reasons why release is denied, the trial court simply denoted "NA".* Rather, the trial court entered a secure custody order for the juvenile following the 14 December 2010 hearing. However, there are no written compelling reasons stating why the juvenile should not be released pending his appeal denoted on the trial court's order for

secure custody. The trial court only checked a box finding direct contempt by the juvenile as grounds for the order. We note there is no evidence in the record to support this finding. Accordingly, the trial court failed to state any compelling reasons in writing why the juvenile should not be released pending his appeal. Therefore, under section 7B–2605, the juvenile should have been released.

___ N.C. App. ___, ___, 717 S.E.2d 59, 66 (2011) (emphasis added). Ultimately, "passage of time may have rendered the issue of the juvenile's custody pending appeal moot;" however under similar facts, this Court found the appropriate remedy was to "vacate the order denying the juvenile's release pending appeal and remand the matter to the trial court for findings as to the compelling reasons for denying release." *Id.* (citing *In re J.L.B.M.*, 176 N.C. App. 613, 628, 627 S.E.2d 239, 249 (2006)) (internal quotation marks and alterations omitted); *see also Lineberry*, 154 N.C. App. At 256, 572 S.E.2d at 236.

N.C. Gen. Stat. § 7B-2605 first requires written compelling reasons be provided when a trial court denies release pending appeal. Henry was not provided with such a written statement of the compelling reasons for the denial of his release. Therefore, we must vacate the order denying Henry's release pending appeal and remand the matter to the trial court for findings setting out any compelling reasons for denying Henry's release.

## B. Findings of Fact Made by the Trial Court

[4] Henry next argues that the trial court erred by imposing a Level III disposition without making the required written findings of fact in its initial dispositional order. We disagree.

N.C. Gen. Stat. § 7B-2512 (2011) provides that in a juvenile proceeding, "[t]he dispositional order shall be in writing and shall contain appropriate findings of fact and conclusions of law." When deciding the proper disposition for a juvenile, trial courts must develop the final disposition by considering five different factors:

(1)   [t]he seriousness of the offense;

(2)   [t]he need to hold the juvenile accountable;

(3)   [t]he importance of protecting the public safety;

(4)   [t]he degree of culpability indicated by the circumstances of the case; and

(5)  [t]he rehabilitative and treatment needs of the juvenile indicated by a risk and needs assessment.

N.C. Gen. Stat. §§ 7B-2501(c)(1)–(5) (2011).

Here, the trial court entered a written dispositional order on 17 September 2012, but initially did not make the findings of fact or conclusions of law required by § 7B-2512 or consider the factors listed in § 7B-2501. However, on 27 September 2012, Chief District Court Judge Elizabeth Keever filed a disposition and adjudication order pursuant to N.C. R. Civ. P. 63 that contained these findings. *Matter of Whisnant*, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984) (analyzing the use of Rule 63 in a juvenile proceeding). Chief Judge Keever's order closely tracked the oral findings of fact made by Judge Dickson, and effectively reduced Judge Dickson's findings to writing. *See Matter of Bullabough*, 89 N.C. App. 171, 180, 365 S.E.2d 642, 647 (1988) (holding that a trial judge may make a written judgment that conforms to the oral findings pronounced in open court and that the order conformed generally to the oral pronouncement).

Henry argues that this completed disposition and adjudication order is not sufficient under *In re Ferrell*, 162 N.C. App. 175, 589 S.E.2d 894 (2004). In *Ferrell*, this Court remanded a dispositional order to the trial court because the dispositional order failed to contain appropriate findings of fact. *Id.* At 177, 589 S.E.2d at 895. However, in *Ferrell*, the trial court's findings of fact were deemed to be insufficient because they did not fully address the factors laid out in § 7B-2501, nor did the findings adequately support the trial court's decision. *Id.* The custody decision adopted in *Ferrell* rested "solely on the juvenile's school absences" rather than a consideration of all of the factors required by statute. *Id.* Further, Henry notes that the trial court in *Ferrell* made significant findings of fact in a later order denying the juvenile's motion to reconsider a custody transfer. *Id.* A second order that is not dispositional is not equivalent to Chief Judge Keever's revision of Judge Dickson's order. The trial judge's revision in *Ferrell* was instead a separate order which did not cure the dispositional order's non-compliance with the statute. *Id.* Henry also relies on *In re V.M.* to argue that this case lacked adequate factual findings. 211 N.C. App. 389, 712 S.E.2d 213 (2011). However, there were no findings of fact made by the trial court in *In re V.M.* or its subsequent revision of the deficient order, making the comparison inapposite. *Id.* At 392, 712 S.E.2d at 216.

Concerning the substance of the dispositional order, Chief Judge Keever's later order provided an ample factual basis for the dispositional

decision that addressed the factors laid out in § 7B-2501(c). Subsections 1 and 4 of § 7B-2501(c) require findings addressing the seriousness of the offense and the culpability of the juvenile. Chief Judge Keever's 17 September 2012 order found, beyond a reasonable doubt, that "the offenses were committed in a premeditated and willful manner [and] [t]hat the sex offense [committed] [was] an extremely serious charge." This finding sufficiently satisfied those subsections.

Subsections (2) and (5) of § 7B-2501(c) address the need to hold the juvenile accountable and the treatment needs of the juvenile. Chief Judge Keever found that the juvenile continued to deny the allegations against him, and indicated that sex offender treatment would not benefit him. Chief Judge Keever additionally determined that the juvenile had symptoms of ADHD, indicating that a controlled environment was more appropriate. Thus, the order satisfied those subsections.

Subsection 3 of § 7B-2501(c) addresses the need for public safety. Chief Judge Keever's order found that Henry's family still lives next to Linda's family and that a relationship between both families still exists. Because of this close familial relationship, and the proximity of Linda to Henry, Chief Judge Keever concluded there was too great a danger in releasing the juvenile, satisfying the last remaining subsection.

Thus, unlike *Ferrell and V.M.*, the order in this case not only contains written findings of fact, but the additional findings of fact adequately addressed all of the § 7B-2501(c) statutory factors. In light of the above findings of fact and the fact that the findings were made via a written order that restated the findings made after the disposition and adjudicatory hearings, we affirm the lower court.

## C. Adjudicatory and Disposition Hearing Procedure

[5] Henry next argues the trial court erred by adjudicating him responsible for an offense and committing him to a Youth Development Center without first holding an adjudicatory hearing and a dispositional hearing. We disagree.

Henry contends that during juvenile proceedings, the trial court must hold separate adjudicatory and dispositional hearings. While a trial court is required to hold both hearings for a juvenile proceeding, there is not a requirement that each hearing be separate and distinct. *See State v. Rush*, 13 N.C. App. 539, 546, 186 S.E.2d 595, 600 (1972) (finding that a court can consider the needs of a child immediately after an adjudicatory hearing); *J.J.*, ___ N.C. App. at ___, 717 S.E.2d at 62. In *J.J.*, this Court held that so long as the juvenile's constitutional and statutory

IN RE G.C.

[230 N.C. App. 511 (2013)]

rights are protected, a trial court may conduct the transfer hearing, the adjudicatory hearing, and dispositional hearing all "in one proceeding." ___ N.C. App. at ___, 717 S.E.2d at 62.

Here, Henry's constitutional or statutory rights were not negatively impacted by the trial court's actions. Although the trial judge did not at any point clearly state he was moving from the transfer hearing to the adjudicatory hearing, or from the adjudicatory hearing to the dispositional hearing, the trial judge provided defense counsel with an ample opportunity to present additional evidence. Henry cites *In re Lail*, 55 N.C. App. 238, 284 S.E.2d 731 (1981), and *In re A.W.*, 209 N.C. App. 596, 706 S.E.2d 305 (2011) to argue for separate hearings, but both cases are distinguishable. In *Lail*, this Court remanded a juvenile's case because the juvenile was not allowed to present evidence. 55 N.C. App. at 241, 284 S.E.2d at 733. In this case, Henry's counsel was provided several opportunities to present evidence, and Henry's counsel took advantage of these opportunities each time that they arose.

*In re A.W.* is also distinguishable. *A.W.* involved a juvenile who was not allowed to present a closing argument, and this Court remanded the case for a new trial. 209 N.C. App. at 602–03, 706 S.E.2d at 309–10. Here, at the end of the dispositional hearing, Judge Dickson asked Henry's counsel whether she wished to present "further evidence on behalf of the juvenile," providing opportunity for a closing argument. As sufficient opportunities to present his case were provided, Henry's constitutional or statutory rights were not adversely impacted by the trial court's approach. Thus, we find no error.

## IV. Conclusion

For the foregoing reasons, we grant Henry's writ of certiorari and remand to the trial court for findings of fact as to why Henry was not released from custody pending appeal. We affirm the trial court's ruling regarding the remaining issues.

AFFIRMED IN PART, REMANDED IN PART.

Judges ERVIN and DAVIS concur.