ZACHARY, Judge.
 

 *753
 
 The juvenile-appellant, Daniel,
 
 [1]
 
 appeals from a disposition order that committed him to the Department of Juvenile Justice for placement in a training school for a minimum of six months and a maximum not to exceed his eighteenth birthday. On appeal Daniel argues that the trial court erred in its disposition order by failing to enter findings that reflected its consideration of the factors set out in N.C. Gen. Stat. § 7B-2501(c), and abused its discretion by entering a Level 3 disposition committing him to training school. For the reasons that follow, we disagree.
 

 *511
 

 I. Factual and Procedural Background
 

 Daniel was born in 1999 and grew up in Charlotte, North Carolina. On 22 December 2014, the Mecklenburg County Department of Juvenile Justice filed petitions alleging that Daniel was a delinquent juvenile in that he had committed the misdemeanor offenses of communicating a threat, second-degree trespass, simple assault, and assault on a government official. On 20 February 2015, a petition was filed alleging that Daniel was guilty of simple possession of less than a half ounce of
 
 *754
 
 marijuana. On 6 March and 31 March 2015, petitions were filed alleging that Daniel had committed the offense of robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. Daniel's father and older brother were identified in the petition as Daniel's co-conspirators.
 

 In connection with the juvenile petitions, a juvenile court counselor filed a report for the trial court's use. This report described Daniel's attitude towards authority figures as "very rude and disrespectful" and stated that Daniel's mother was unable to effectively discipline Daniel. At school, Daniel had a "history of suspensions for aggressive behaviors, being disruptive, insubordinate, and fighting" and had admitted to skipping school on occasion. Daniel had been diagnosed with Type 2 diabetes for which he took insulin, as well as ADHD (attention deficit hyperactivity disorder ) and ODD (oppositional defiant disorder ), for which he was prescribed a psychoactive medication.
 

 On 15 July 2015, a hearing was conducted on the juvenile petitions filed in this case. Daniel admitted that he had committed the offense of robbery with a dangerous weapon, and the State dismissed the other petitions. On 23 July 2015, the trial court entered an order that adjudicated Daniel to be a delinquent juvenile and imposed a Level 2 disposition, pursuant to N.C. Gen. Stat. § 7B-2508 (2015). Daniel was placed on juvenile probation for a period of 12 months and was required to comply with a 6:00 p.m. curfew, attend school regularly, and not violate any laws or possess any controlled substances.
 

 On 1 September 2015, juvenile petitions were filed alleging that on 27 July 2015, just four days after being placed on probation, Daniel committed the offenses of resisting, delaying, or obstructing a law enforcement officer (when he jumped from a stolen vehicle), and possession of less than a half ounce of marijuana. Daniel's court counselor filed a motion for review alleging that Daniel had violated the terms of his juvenile probation by committing the offenses alleged in the petitions, by failing to adhere to the court-imposed curfew, and by being suspended from school for ten days. At a hearing conducted on 21 October 2015, Daniel admitted to possession of marijuana and the State dismissed the petition alleging that Daniel had resisted an officer. The trial court entered an order that continued Daniel on juvenile probation. On 8 January 2016, Daniel's court counselor filed a motion for review, alleging that Daniel had violated probation by failing to abide by his curfew and by being suspended from school for ten days. Another motion for review was filed on 2 February 2016, alleging that Daniel had violated his
 
 *755
 
 probation by leaving the home of his grandmother, with whom he had been directed to reside.
 

 On 1 March 2016, the trial court conducted a hearing on the motions for review, at which Daniel admitted to violating the terms of his probation. The trial court continued the disposition until 11 April 2016, and entered an order that stated in relevant part that "[i]f [Daniel] does what he needs to do then he will remain at a Level 2 disposition[;] if not he will be committed to training school." On 30 March 2016, a motion for review was filed, alleging that Daniel had violated probation by skipping school and being suspended from school. Following a dispositional hearing, the trial court entered an order on 25 April 2016, imposing a Level 3 disposition and committing Daniel to training school for a period of at least six months until no later than his 18th birthday. Daniel has appealed to this Court from this order.
 

 II. Standard of Review
 

 On appeal, Daniel does not dispute the validity of his adjudication as a delinquent juvenile or dispute the fact that he violated the terms of his probation. Nor does Daniel challenge the trial court's statutory authority
 
 *512
 
 pursuant to N.C. Gen. Stat. § 7B-2510(e) (2015) to impose a Level 3 disposition committing him to training school upon Daniel's admission to violating his probation. Daniel argues instead that the trial court failed to comply with the statutory requirements for entry of a dispositional order and that the trial court's choice of disposition constituted an abuse of the court's discretion. Accordingly, we first review the standards to which a trial court must adhere in fashioning an appropriate disposition for a delinquent juvenile.
 

 N.C. Gen. Stat. § 7B-2500 (2015) provides that:
 

 The purpose of dispositions in juvenile actions is to design an appropriate plan to meet the needs of the juvenile and to achieve the objectives of the State in exercising jurisdiction, including the protection of the public. The court should develop a disposition in each case that:
 

 (1) Promotes public safety;
 

 (2) Emphasizes accountability and responsibility of both the parent, guardian, or custodian and the juvenile for the juvenile's conduct; and
 

 (3) Provides the appropriate consequences, treatment, training, and rehabilitation to assist the juvenile toward
 
 *756
 
 becoming a nonoffending, responsible, and productive member of the community.
 

 The three levels of disposition for a delinquent juvenile are set out in N.C. Gen. Stat. § 7B-2508, which correlates the permissible disposition level to the offense for which the juvenile is being adjudicated delinquent and his prior history of juvenile adjudications. Daniel was initially given a Level 2-Intermediate disposition. Upon his repeated violation of the terms of probation, the trial court was authorized under N.C. Gen. Stat. § 7B-2510(e) to "order a new disposition at the next higher level on the disposition chart[,]" in this case a disposition under Level 3-Commitment. Daniel does not dispute that the disposition in the present case represented a legally valid choice under the relevant statutes.
 

 The standard of review in such cases is well established: "In instances involving permissive statutory language, such as the language contained in N.C. Gen. Stat. § 7B-2510(e), the validity of the trial court's actual dispositional decision is reviewed on appeal using an abuse of discretion standard of review."
 
 In re Z.T.W
 
 .,
 
 238 N.C.App. 365
 
 , 370,
 
 767 S.E.2d 660
 
 , 664-65 (2014) (citation omitted). "[A]n abuse of discretion is established only upon a showing that a court's actions are manifestly unsupported by reason, or so arbitrary that [they] could not have been the result of a reasoned decision."
 
 In re E.S
 
 .,
 
 191 N.C.App. 568
 
 , 573,
 
 663 S.E.2d 475
 
 , 478 (2008) (internal quotation marks and citation omitted). "[A] trial court's dispositional decision should be upheld on appeal unless the decision in question could not have been a reasoned one."
 
 Z.T.W
 
 .,
 
 238 N.C.App. at 370
 
 ,
 
 767 S.E.2d at 665
 
 .
 

 III. Sufficiency of Findings of Fact in the Dispositional Order
 

 Daniel argues first that the trial court erred by failing to include appropriate findings of fact in the dispositional order. N.C. Gen. Stat. § 7B-2501(c) (2015) provides that, in "choosing among statutorily permissible dispositions," the trial court "shall select a disposition that is designed to protect the public and to meet the needs and best interests of the juvenile" and that the trial court's selection should be based upon:
 

 (1) The seriousness of the offense;
 

 (2) The need to hold the juvenile accountable;
 

 (3) The importance of protecting the public safety;
 

 (4) The degree of culpability indicated by the circumstances of the particular case; and
 
 *757
 
 (5) The rehabilitative and treatment needs of the juvenile as indicated by a risk and needs assessment.
 

 N.C. Gen. Stat. § 7B-2512 (2015) provides in relevant part that the "dispositional order shall be in writing and shall contain appropriate findings of fact and conclusions of law." On appeal, Daniel asserts that in order for a trial court's findings in a disposition order to constitute the "appropriate" findings of fact required by N.C. Gen. Stat. § 7B-2512, these
 
 *513
 
 findings must reference the specific factors listed in N.C. Gen. Stat. § 7B-2501(c) and must document the trial court's consideration of each of these factors. On the other hand, the State argues on appeal that "neither statute requires the trial court to make written findings of fact for each of the five considerations under [N.C. Gen. Stat. §] 7B-2501(c)." After careful review, we agree with the State.
 

 The position taken by Daniel on appeal is based upon the discussion in some of our prior cases concerning the holding of
 
 In re Ferrell
 
 ,
 
 162 N.C.App. 175
 
 ,
 
 589 S.E.2d 894
 
 (2004). However, upon thorough examination, it is apparent that the standard posited rests upon the mischaracterization of
 
 Ferrell
 
 and subsequent repetition of this error.
 

 As discussed above, N.C. Gen. Stat. § 7B-2501(c) directs the court to consider specific factors in its determination of the appropriate level or type of disposition in a juvenile delinquency case. In
 
 Ferrell
 
 , the juvenile appealed from a specific provision of the disposition order that removed him from the custody of his mother and placed him in the custody of his father. Although the juvenile did not challenge the dispositional level or type of disposition chosen by the trial court, the
 
 Ferrell
 
 opinion observed that a court's discretion to fashion an appropriate disposition is not unlimited, noting the statutory parameters for selection of a disposition level that are set out in N.C. Gen. Stat. § 7B-2501(c). The opinion in
 
 Ferrell
 
 also quoted the requirement in N.C. Gen. Stat. § 7B-2512 that the court's order "shall be in writing and shall contain
 
 appropriate
 
 findings of fact and conclusions of law." (emphasis in original). We held that "the findings of fact in the dispositional order do not support the trial court's decision to transfer custody of the juvenile from the mother to the father" and set aside that part of the disposition order.
 
 Ferrell
 
 ,
 
 162 N.C.App. at 177
 
 ,
 
 589 S.E.2d at 895
 
 .
 

 Significantly, the issue addressed by our opinion in
 
 Ferrell
 
 was confined to the adequacy of the trial court's findings to support its transfer of custody from the child's mother to his father. The case did not involve any consideration of the court's determination of the appropriate disposition level, which was not implicated in any manner by the court's
 
 *758
 
 custody decision. Our opinion in
 
 Ferrell
 
 did not discuss the extent, if any, to which a disposition order must reference the factors set out in N.C. Gen. Stat. § 7B-2501 in order to justify the court's selection of a particular disposition. Moreover, the provision of the disposition order that was at issue in
 
 Ferrell
 
 -whether the juvenile's custody should be with his mother or with his father-is entirely separate from the determination of an appropriate disposition level. Thus,
 
 Ferrell
 
 did not hold that it is reversible error for a trial court to enter a disposition order that fails to include findings that demonstrate its consideration of the factors in N.C. Gen. Stat. § 7B-2501. In fact,
 
 Ferrell
 
 said nothing at all on this subject.
 

 In
 
 In re V.M
 
 .,
 
 211 N.C.App. 389
 
 , 391-92,
 
 712 S.E.2d 213
 
 , 215 (2011), this Court stated as the basis for its ruling that "we have previously held that the trial court is required to make findings demonstrating that it considered the N.C.G.S. § 7B-2501(c) factors in a dispositional order entered in a juvenile delinquency matter[,]" and cited
 
 Ferrell
 
 as authority for this statement. However,
 
 Ferrell
 
 did
 
 not
 
 address the degree to which a court's findings must specifically reflect consideration of the factors listed in N.C. Gen. Stat. § 7B-2501(c), and did
 
 not
 
 set out any rule regarding this issue. Nonetheless,
 
 V.M.
 
 's mischaracterization of
 
 Ferrell
 
 was repeated in several later cases. For example, in
 
 In re J.J.
 
 ,
 
 216 N.C.App. 366
 
 , 375,
 
 717 S.E.2d 59
 
 , 65 (2011), the opinion quoted
 
 V.M
 
 . as follows:
 

 [T]he trial court was required to make written findings of fact in its dispositional order. "[T]he trial court is required to make findings demonstrating that it considered the N.C.G.S. § 7B-2501(c) factors in a dispositional order entered in a juvenile delinquency matter."
 
 In re V.M
 
 ., [211] N.C.App. [389, 392],
 
 712 S.E.2d 213
 
 , 215 (2011). Thus, the trial court erred in failing to include the requisite findings of fact in its dispositional order. Accordingly, we must vacate the trial court's dispositional order and remand the matter to the trial court to make the statutorily mandated
 
 *514
 
 findings of fact in the juvenile's written dispositional order.
 

 See also, e.g.
 
 ,
 
 In re K.C
 
 .,
 
 226 N.C.App. 452
 
 , 462,
 
 742 S.E.2d 239
 
 , 246 (2013) ("We have interpreted [ § 7B-2512 ] to require the juvenile court 'to make findings demonstrating that it considered the N.C.G.S. § 7B-2501(c) factors in a dispositional order entered in a juvenile delinquency matter.'
 
 In re V.M.
 
 ,
 
 211 N.C.App. 389
 
 , 391,
 
 712 S.E.2d 213
 
 , 215 (2011)"), and
 
 In re G.C
 
 .,
 
 230 N.C.App. 511
 
 , 520,
 
 750 S.E.2d 548
 
 , 554 (2013) ("in
 
 Ferrell
 
 , the trial court's findings of fact were deemed to be insufficient because they did not fully address the factors laid out in § 7B-2501").
 

 *759
 
 It is axiomatic that "[w]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."
 
 In re Appeal from Civil Penalty
 
 ,
 
 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 36 (1989). However, the opinion in
 
 Ferrell
 
 did not arrive at a determination or "decide" the issue of a trial court's duty to include findings in its disposition order that match the factors in N.C. Gen. Stat. § 7B-2501. Nor did
 
 V.M
 
 . analyze or decide this issue; rather, the opinion merely referenced an erroneous characterization of the earlier opinion in
 
 Ferrell
 
 . As a result, our clarification of the actual holding of the
 
 Ferrell
 
 opinion does not constitute "overruling"
 
 Ferrell
 
 or any of the later cases that cited
 
 Ferrell
 
 .
 

 The requirements for a dispositional order are governed by N.C. Gen. Stat. § 7B-2512, which states in relevant part that:
 

 The dispositional order shall be in writing and shall contain appropriate findings of fact and conclusions of law. The court shall state with particularity, both orally and in the written order of disposition, the precise terms of the disposition including the kind, duration, and the person who is responsible for carrying out the disposition and the person or agency in whom custody is vested.
 

 Upon careful review of the statutory language and our prior jurisprudence, we find no support for a conclusion that in every case the "appropriate" findings of fact must make reference to all of the factors listed in N.C. Gen. Stat. § 7B-2501(c), including those factors that were irrelevant to the case or in regard to which no evidence was introduced. However, because Daniel's sole challenge to the sufficiency of the trial court's findings of fact is that they fail to demonstrate consideration of the factors in N.C. Gen. Stat. § 7B-2501(c), we have reviewed this argument and conclude that the court's findings indicate its consideration of these factors.
 

 The trial court's findings of fact are contained in an attachment to its dispositional order that is titled "Findings of Fact for [Daniel] Level 3 Commitment Order." This attachment states that:
 

 The juvenile was adjudicated on a serious charge of Robbery with a Dangerous weapon on July 16th, 2015, at a level 2. Eleven days later, he was charged with misdemeanor possession of marijuana, and was adjudicated on that charge on October 21st, 2015. The juvenile was originally compliant with the probationary term during
 
 *760
 
 October and November of 2015, engaging in the GAP program and doing his community service while residing with his grandmother. Starting in December, the juvenile [began] violating curfew orders, leaving his home all night on December 15th, and eventually leaving his grandmother's home permanently on December 29th, as well as moving in with his father who was a co-defendant on the underlying RWDW, in violation of his court order. He was also suspended 10 days from school for fighting. The juvenile admitted an MFR relating to these violations on March 1st 2016, and disposition was continued until April in order to give the juvenile one last opportunity to comply with the court orders. The court's orders required that the juvenile was placed back into the grandmother's home with his mother, the juvenile was to obtain a substance abuse assessment at McLeod, not be suspended from school or be late to school unexcused, cooperate with YFS, complete his community service hours, and cooperate with Access treatment. On March 3rd, the juvenile was suspended from school for fighting with another student. On March 22nd, the juvenile was absent from his second block class
 
 *515
 
 unexcused. An MFR was filed on 3/30/16 for these violations, and the juvenile admitted the MFR on 4/18/2016. The juvenile had also not received substance treatment at McLeod since the previous court date. While the juvenile did complete his community service hours and the GAP program, due to the serious nature of the underlying offense adjudicated, and the continued noncompliance with court orders regarding school, curfew, substance abuse treatment, and having contact with his father, the Court finds that a YDC is the most appropriate structure for the juvenile and the community's needs.
 

 As discussed above, the factors upon which the trial court is directed to base its determination of the appropriate dispositional level include (1) the seriousness of the offense; (2) the need to hold the juvenile accountable; (3) the importance of protecting the public safety; (4) the degree of culpability indicated by the circumstances of the particular case; and (5) the rehabilitative and treatment needs of the juvenile as indicated by a risk and needs assessment. We conclude that the trial court's findings of fact demonstrate its consideration of these criteria.
 

 The parties do not dispute that robbery with a dangerous weapon is a serious offense, and the trial court found that Daniel "was adjudicated
 
 *761
 
 on a serious charge of Robbery with a Dangerous weapon," thereby demonstrating the court's consideration of the "seriousness of the offense." The trial court's findings set out in some detail Daniel's repeated failure to comply with the terms of his probation, despite being given several opportunities to remain on probation. These findings establish the court's consideration of the "need to hold the juvenile accountable." The trial court's consideration of the need to protect the public is illustrated by its findings that Daniel was adjudicated for committing an armed robbery and that he has been suspended from school for fighting.
 

 We next examine the extent to which the trial court's findings demonstrate its consideration of Daniel's "degree of culpability." Upon Daniel's adjudication as delinquent, the trial court had the authority to impose either a disposition Level 2-Intermediate or 3-Commitment. N.C. Gen. Stat. § 7B-2508(f) (2015). Daniel stresses on appeal that his co-defendant in this offense was his father. We presume that the trial court considered Daniel's reduced level of culpability when it imposed a Level 2 disposition. The disposition order at issue on appeal is, however, based primarily upon Daniel's repeated violations of probation rather than upon the offense for which Daniel was originally adjudicated delinquent. Accordingly, it is Daniel's "degree of culpability" for his probation violations that is most relevant, rather than his role in the robbery. The court's findings set out various ways in which Daniel violated probation, including possessing marijuana, violating curfew, missing school, and being suspended from school. These violations are based upon Daniel's own actions and do not suggest that some other person was partly responsible for Daniel's violating probation. As a result, these findings indicate that the trial court considered the degree to which Daniel was culpable as regards the violations of the terms of his probation. Finally, the dispositional order expressly references Daniel's failure to obtain treatment for substance abuse, thus indicating the court's consideration of Daniel's rehabilitative and treatment needs. We conclude that the trial court's findings of fact adequately demonstrate its consideration of the factors set out in N.C. Gen. Stat. § 7B-2501(c).
 

 We have considered Daniel's appellate argument urging us to reach a contrary result. We conclude, however, that Daniel is essentially contending that the trial court should have made different findings, based on Daniel's assessment of the evidence, or that the trial court should have weighed the evidence differently. "It is, however, the 'duty of the trial judge to weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom.' 'It is
 
 *762
 
 not the function of this Court to reweigh the evidence on appeal.' "
 
 Burger v. Smith
 
 , --- N.C.App. ----, ----,
 
 776 S.E.2d 886
 
 , 896 (2015) (quoting
 
 Sauls v. Sauls
 
 ,
 
 236 N.C.App. 371
 
 , 373,
 
 763 S.E.2d 328
 
 , 330 (2014) (internal quotations omitted)).
 

 We hold that the trial court was not required by N.C. Gen. Stat. § 7B-2512 to
 
 *516
 
 make findings of fact that expressly tracked each of the statutory factors listed in N.C. Gen. Stat. § 7B-2501(c). However, because this is the sole basis of Daniel's challenge to the trial court's findings, we have carefully reviewed the dispositional order and conclude that the order does, in fact, demonstrate the court's consideration of the statutory factors. Given that Daniel has not challenged the court's findings on any other basis, we are not required to further define the requirements for a court's findings in a dispositional order, beyond the general requirement of N.C. Gen. Stat. § 7B-2512 that the findings be "appropriate." In this regard, we note that N.C. Gen. Stat. § 1A-1 Rule, 52(a)(1) (2015) provides in relevant part that in "all actions tried upon the facts without a jury" the trial court "shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." Thus, in every case in which a trial court sits without a jury, it must enter "appropriate" findings of fact. "What the evidence does in fact show is a matter the trial court is to resolve, and its determination should be stated in appropriate and adequate findings of fact."
 
 Farmers Bank v. Distributors,
 

 307 N.C. 342
 
 , 352,
 
 298 S.E.2d 357
 
 , 363 (1983).
 

 Trial Court's Exercise of Discretion
 

 Daniel also contends that the trial court abused its discretion by imposing a Level 3 disposition. We conclude that Daniel has failed to establish that the trial court abused its discretion.
 

 It has long been the rule that:
 

 The abuse of discretion standard of review is applied to those decisions which necessarily require the exercise of judgment. The test for abuse of discretion is whether a decision "is manifestly unsupported by reason," or "so arbitrary that it could not have been the result of a reasoned decision." The intended operation of the test may be seen in light of the purpose of the reviewing court. Because the reviewing court does not in the first instance make the judgment, the purpose of the reviewing court is not to substitute its judgment in place of the decision maker. Rather, the reviewing court sits only to insure that
 
 *763
 
 the decision could, in light of the factual context in which it is made, be the product of reason.
 

 Little v. Penn Ventilator Co
 
 .,
 
 317 N.C. 206
 
 , 218,
 
 345 S.E.2d 204
 
 , 212 (1986) (quoting
 
 White v. White
 
 ,
 
 312 N.C. 770
 
 , 777,
 
 324 S.E.2d 829
 
 , 833 (1985), and
 
 State v. Wilson
 
 ,
 
 313 N.C. 516
 
 , 538,
 
 330 S.E.2d 450
 
 , 465 (1985) ).
 

 On appeal, Daniel acknowledges his repeated violations of probation, but directs our attention to evidence in the record tending to show that Daniel faced difficult family circumstances and that he successfully completed some of the requirements of probation. The existence of such evidence, although it might have supported a decision by the trial court to impose a Level 2 disposition, does not support a conclusion that the trial court's decision to impose a Level 3 disposition was unreasonable. As discussed above, during the eight months following Daniel's placement on juvenile probation, his court counselor filed motions for review alleging violations of probation for, among other things, possession of marijuana, fighting at school, failing to attend school, failing to cooperate with his court counselor, failing to comply with his curfew, and absconding from the home where he had been ordered to reside. Despite Daniel's repeated probation violations, the trial court continued him on probation several times. The last time that Daniel was in court to address an alleged violation of probation, the trial court continued disposition for a month and entered an order expressly warning that if Daniel failed to comply with the terms of his probation, he would be sent to training school. However, Daniel continued to violate his probation even after being given another chance to continue on a Level 2 disposition. Under these circumstances, we cannot conclude that the trial court's decision to impose a Level 3 disposition was manifestly unsupported by reason.
 

 For the reasons discussed above, we conclude that the trial court did not err in its disposition order, and that its order is hereby
 

 AFFIRMED.
 

 Judges ELMORE and DILLON concur.
 

 [1]
 

 We refer to the juvenile by the pseudonym Daniel in this opinion for ease of reading and to protect the juvenile's privacy.