IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-3

No. COA20-482

Filed: 2 February 2021

Cumberland County, No. 18 JB 141

IN THE MATTER OF:  K.M.

Appeal by juvenile from order entered 19 February 2020 by Judge Cheri Siler-Mack in Cumberland County District Court.  Heard in the Court of Appeals 12 January 2021.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Melissa K. Walker, for the State.*

> *Appellate Defendant Glenn Gerding, by Assistant Appellate Defender Amanda S. Hitchcock, for juvenile-appellant.*

ARROWOOD, Judge.

¶ 1    K.M. appeals from a dispositional order entered committing him to a youth development center ("YDC").  K.M. contends that the trial court erred by entering a new dispositional order without first referring him to the area mental health services director pursuant to N.C. Gen. Stat. § 7B-2502(c).  K.M. further argues that the trial court violated his due process rights by recommitting him to YDC without proper notice, and that K.M. received ineffective assistance of counsel due to the alleged lack

of notice. We hold that the trial court erred in failing to refer K.M. to the area mental health services director, vacate the dispositional order, and remand for a new hearing and referral to the mental health services director.

## I.     Background

On 16 April 2018, a Cumberland County juvenile court counselor approved the filing of petitions against K.M. alleging that he committed two counts of first-degree statutory sex offense and two counts of second-degree forcible sex offense. The trial court adjudicated K.M. delinquent of all four offenses on 17 October 2018. On 3 December 2018, the trial court entered a "Juvenile Order for Mental Health Services," which included a finding of fact stating "[t]his case involves mental health issues and/or the need for mental health services," and ordered a "Sexual Offender Specific Evaluation" with a report to be provided to the court. On 28 March 2019, the trial court entered a Level III disposition and committed K.M. to a YDC and further ordered that if a Level III group home could be identified for K.M., he was to be brought back before the court for a hearing to consider adjusting his placement. A Cumberland County juvenile court counselor filed a motion for review on 29 April 2019 indicating a Level III placement had been identified for K.M. On 30 May 2019, the trial court approved a community commitment for K.M. at Level III group home Falcon Crest Residential Group Home ("Falcon Crest").

On 20 December 2019, a Cumberland County juvenile court counselor filed another motion for review "to review community commitment status." At a hearing on 27 January 2020, a representative from the Department of Juvenile Justice ("DJJ") testified that K.M. "started to have some issues" in early December 2019. These issues included an in school suspension "for being disrespectful, getting out of the classroom and walking out, because he didn't like something the teacher said[,]" and for being caught with an MP3 player on which K.M. had downloaded inappropriate sexual content; the DJJ representative expressed concern that K.M. had asked the group home manager "not to tell anyone" about the incident with the MP3 player. Additionally, staff members at the group home found a "vape" and "vaping liquid" in K.M.'s possession, and noted that K.M. was not present at a specified meeting spot after school on at least two occasions. Based on these incidents, the DJJ report recommended that K.M. be removed from his community commitment placement and returned to the YDC.

The trial court reviewed a Risk and Needs Assessment ("Assessment") completed by the court counselor on 5 December 2019. The Assessment noted that K.M. was rejected by pro-social peers, had received one short-term suspension from school, "[m]ay use sexual expression/behavior to attain power and control over others," had mental health needs that were being addressed, and experienced domestic discord resulting in emotional or physical conflict. The Assessment

assigned K.M. with a Risk Score of 12, which placed K.M. in the upper range of Risk Level 4 (out of five possible risk levels), and a Needs Score of 17, placing K.M. in the "Medium Needs" level.

¶ 5    The trial court also reviewed a report from Falcon Crest performed on 22 January 2020. The Falcon Crest report noted that K.M. had been participating in group therapy and weekly outpatient therapy for the purpose of assisting K.M. "with adjustment to daily routine and scheduled to decrease stress, anger, and promote independence, competence, and security." While the report described K.M. as showing "some progress with his impulsive behavior," K.M. "puts himself and others at risk by making poor choices." The report described K.M. as "quick to blame others or make excuses[,]" and as continuing to "be impulsive and does not think before acting." With regards to the long term goals for K.M.'s therapy, the report noted that K.M. "is still attempting to understand the relationship between positive behaviors, getting along with his peers, following staff/school official directives, [and] respecting authority figures," and occasionally "struggles with . . . processing that his past behaviors, manipulating, and compl[ying] with probation is still [a] very important part of his current situation." A therapist's addendum to the report stated that K.M. "continues to need supervision, structure, education, and role modeling to assist him with managing negative impulses and behaviors."

¶ 6     The trial court then reviewed a Rehabilitated Support Services report from an assessment performed on 21 January 2020. Falcon Crest had requested that Rehabilitative Support Services conduct the assessment shortly after the Motion for Review was filed. The report, which referred to K.M. by an incorrect first name, stated that K.M. was at very low risk for re-offending and still required intensive treatment individualized to address his specialized needs, and recommended that K.M. remain in the Level III group home. The trial court disregarded the report due to the incorrect name.

¶ 7     K.M.'s trial counsel argued that K.M. had not received adequate notice because the motion simply directed the trial court "to review Community Commitment status[,]" and because there was no violation report filed. The State's trial counsel asked that "whatever the Court's decision . . . [K.M.]'s current acts clearly show that . . . he can benefit there with further treatment whether that's back in YDC, if he's going to get that, or another program. But . . . really that he gets the best treatment to take care of these situations[.]"

¶ 8     The trial court heard additional testimony from Lakkiyah Sellers ("Ms. Sellers"), K.M.'s social worker, George Adam ("Mr. Adams"), a Falcon Crest staff member, and K.M.'s mother. Ms. Sellers expressed concern that K.M. was not adequately engaging in his monthly treatment team meetings, and that "he's always reporting that everything is going well, when it is not." Mr. Adam testified that K.M.

was "a likeable young man[,]" but that at times "his maturity level is not understanding how the severity of what his charges are[,] [a]nd the decisions that he makes is not, you know, reality based, because . . . his mind is not set to understand it, these serious charges." K.M.'s mother testified that K.M. did not have many incidents before December 2019, and that "the things that are being said in the courtroom, are not being said in the meetings. And they're not addressing [K.M.] about any of that. This is the first that I've [heard] something, and we go to every meeting."

¶ 9 At the close of testimony and argument, the trial court revoked K.M.'s community commitment and ordered him to return to YDC over the objection of K.M.'s trial counsel. The trial court noted that "initially there was [a] smooth transition with [K.M.'s] placement" at Falcon Crest, but that in the past month K.M. had "spiral[ed]" out. The trial court also expressed concern with K.M.'s "increase of impulsivity[,]" and that K.M. was "not engaging seriously in his treatment." The trial court noted K.M.'s trial counsel's objection and K.M. orally appealed.

## II. Analysis

¶ 10 K.M. contends that the trial court erred by entering a new dispositional order without first referring K.M. to the area mental health services director. We agree.

¶ 11 When a juvenile argues to this Court that the trial court failed to follow a statutory mandate, the error is preserved and is a question of law reviewed *de novo*.

*In re G.C.*, 230 N.C. App. 511, 515-16, 750 S.E.2d 548, 551 (2013). Under the *de novo* standard, the Court considers the matter anew and freely substitutes its own judgment for that of the lower court. *In re A.M.*, 220 N.C. App. 136, 137, 724 S.E.2d 651, 653 (2012).

¶ 12        "Disposition of cases involving juveniles should '[p]rovide the appropriate consequences, treatment, training, and rehabilitation to assist the juvenile toward becoming a nonoffending, responsible, and productive member of the community.'" *In re E.M.*, 263 N.C. App. 476, 478, 823 S.E.2d 674, 676 (2019) (quoting N.C. Gen. Stat. § 7B-2500(3)). When a juvenile comes before a trial court, "the court *may* order that the juvenile be examined by a physician, psychiatrist, psychologist, or other qualified expert *as may be needed* for the court to determine the needs of the juvenile." N.C. Gen. Stat. § 7B-2502(a) (2019) (emphasis added). When evidence of mental health issues is presented to the trial court, the authority to order the evaluation of a juvenile by certain medical professionals is no longer discretionary, but is required:

> If the court believes, or if there is evidence presented to the effect that the juvenile is mentally ill or is developmentally disabled, the court *shall* refer the juvenile to the area mental health, developmental disabilities, and substance abuse services director for appropriate action. . . . The area mental health, developmental disabilities, and substance abuse director shall be responsible for arranging an interdisciplinary evaluation of the juvenile and mobilizing resources to meet the juvenile's needs.

N.C. Gen. Stat. § 7B-2502(c) (emphasis added).

¶ 13        The use of the word "shall" indicates a statutory mandate that when the trial court is faced with any amount of evidence that a juvenile is mentally ill, the trial court must refer the juvenile to the area mental health services director for appropriate action, and failure to do so is error. *In re E.M.*, 263 N.C. App. at 478, 823 S.E.2d at 676 (citation omitted). This mandate requires the trial court to refer the juvenile to the area mental health services director regardless of whether the juvenile has already received mental health services prior to the disposition. *Id.* at 480, 823 S.E.2d at 677. This Court recently noted that the position of "area mental health services director" no longer exists as referenced in N.C. Gen. Stat. § 7B-2502(c) and is now identified as the "local management entity/managed care organization" found in N.C. Gen. Stat. § 122C-3(20b). *In re E.A.*, 267 N.C. App. 396, 400, n.3, 833 S.E.2d 630, 633, n.3 (2019). Because the General Assembly has not yet updated the language of N.C. Gen. Stat. § 7B-2502(c) to reflect this change, we will continue to refer to the position as the area mental health services director.

¶ 14        In this case, evidence was presented to the trial court establishing K.M.'s mental health issues. The trial court reviewed multiple reports that described K.M.'s continued need for mental health treatment, including the Risk and Needs Assessment that placed K.M. at Risk Level 4 and the "Medium Needs" level. The DJJ representative testified that K.M. had exhibited increasingly significant issues with impulse control and truthfulness in the months preceding the hearing, in addition to

K.M.'s social worker expressing concern that K.M. was not seriously engaging in his mental health treatment. This evidence required the trial court to refer K.M. to the area mental health services director, rather than revoke K.M.'s community status and order his return to YDC.

¶ 15 The State contends that this case is distinguishable from *In re E.M.* because prior to the hearing on the Motion for Review, K.M. was referred by Falcon Crest to Rehabilitated Support Services for evaluation. Rehabilitated Support Services is a provider for Alliance Health, the local management entity/managed care organization contemplated by the statute. The State argues that because the trial court considered the evaluation during the hearing, it was not required to refer K.M. to the area mental health services director. Additionally, the State argues that "[w]hile the statute envisions the area mental health services director's involvement in assisting the court with crafting a disposition . . ., nothing in [N.C. Gen. Stat. §] 7B-2502(c) allows the agency to usurp the court's discretionary authority in ultimately determining the appropriate disposition alternatives."

¶ 16 The State's argument incorrectly describes the trial court's statutory duty in this case. The text of N.C. Gen. Stat. § 7B-2502(c) plainly states that when there is evidence presented to the effect that the juvenile is mentally ill or is developmentally disabled, the trial court "shall" refer the juvenile to the area mental health services director for appropriate action. The trial court does not have the discretionary

authority to disregard this statute in favor of "appropriate disposition alternatives." The trial court's failure to make the statutorily mandated referral was error, and accordingly the trial court's order must be vacated.

Because we vacate the trial court's order for statutory error, we do not reach K.M.'s arguments regarding notice and due process.

## III.    Conclusion

For the foregoing reasons, we hold that the trial court erred in failing to refer K.M. to the area mental health services director, vacate the dispositional order, and remand for a new hearing and referral to the area mental health services director.

VACATED AND REMANDED.

Judges DILLON and INMAN concur.