BARNES, J.,
 

 for the Court.
 

 ¶ 1. This appeal proceeds from the Circuit Court of Clay County, on James Earl Holmes’s conviction of sexual battery and sentence of thirty years as a habitual offender in the custody of the Mississippi Department of Corrections (MDOC) without eligibility for parole and a fine of $10,000.
 

 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On or about June 4, 2006, Holmes was in West Point, Mississippi to attend the funeral of his sister. After visiting with family, Holmes went to the home of his former live-in girlfriend, B.L.,
 
 [1]
 
 whom he had known for more than twenty years. B.L. planned to drive him home to Jackson, Mississippi, the next morning.
 

 ¶ 3. B.L. lived with her two daughters— ages twenty-years-old and fifteen-years-old. The oldest daughter, R.L., is trainable mentally retarded with an I.Q. between 25 and 50 and has limited conceptual and communication skills. B.L. allowed Holmes to sleep with her while her daughters slept elsewhere in the house. According to B.L., Holmes asked her several
 
 *682
 
 times chmng the night if she were asleep, and she answered negatively each time. After her answer, Holmes would then get up and leave the room, which he repeated several times. B.L. eventually got out of bed to investigate.
 

 ¶ 4. As B.L. walked through the house, she passed her youngest daughter who was asleep on the couch in the den and proceeded to the open door of the kitchen. It was there she witnessed Holmes standing behind her oldest daughter, R.L., having sexual intercourse with her. R.L. was bent over with her pants down, and Holmes was standing behind her with his eyes closed. B.L. yelled at Holmes, who jumped and then fell to his knees pleading with B.L. not to tell his family.
 

 ¶ 5. B.L. contacted the police and then took R.L. to the hospital that evening where the nurses performed a rape kit. One of the nurses, Shelly Thomas, said that R.L. appeared nonchalant. When asked what had happened, R.L. indicated Holmes had touched her and signaled to her rectal area.
 

 ¶ 6. The Mississippi Crime Laboratory analyzed R.L.’s rape kit, as well as the suspect kit that Holmes submitted. The suspect kit contained samples taken from Holmes for the purpose of having comparison evidence when analyzing the rape kit. William Jones, the DNA section chief of the biosciences division at the Mississippi Crime Laboratory, examined both kits and found no evidence that biologically linked Holmes to the evidence contained in R.L.’s rape kit. There was no presence of seminal fluid in any of the samples. The samples taken from R.L. included, but were not limited to, two rectal swabs, four vaginal swabs, and two vulvar swabs.
 

 ¶ 7. On or about October 6, 2006, Holmes was indicted for sexual battery under Mississippi Code Annotated section 97-3-95(l)(b) (Rev.2006), which states: “A person is guilty of sexual battery if he or she engages in
 
 sexual penetration
 
 with .... [a] mentally defective, mentally incapacitated or physically helpless person[.]” (Emphasis added). A jury trial was held on July 25-26, 2007, and Holmes was convicted of sexual battery and sentenced to thirty years as a habitual offender in the custody of the Mississippi Department of Corrections. It is from this conviction that Holmes now appeals, raising a single issue on appeal.
 

 Whether the trial court erred in failing to grant Holmes’s motion for a directed verdict, in denying his request for a peremptory instruction of “not guilty,” and in denying his motion for a judgment notwithstanding the verdict as the sufficiency of the evidence did not support a conviction of sexual battery.
 

 ¶ 8. During the trial, Holmes submitted a motion for a directed verdict at the close of the State’s case-in-chief, which was denied. Holmes also submitted a motion for a JNOV or, in the alternative, for a new trial on July 27, 2007, which was also denied by the trial court. “The standard of review for a denial of a directed verdict, peremptory instruction and a J.N.O.V. are identical.”
 
 Hawthorne v. State,
 
 835 So.2d 14, 21 (¶ 31) (Miss.2003) (citing
 
 Coleman v. State,
 
 697 So.2d 777, 787 (Miss.1997)). All “challenge the legal sufficiency of the evidence.”
 
 Id.
 
 (citing
 
 McClain v. State,
 
 625 So.2d 774, 778 (Miss.1993)). The evidence, when viewed in the light most favorable to the State, must prove “all elements of the offense existed and the accused committed the act charged beyond a reasonable doubt.”
 
 Graves v. State,
 
 984 So.2d 1035, 1040(¶ 12) (Miss.Ct.App.2008) (citing
 
 Bush v. State,
 
 895 So.2d 836, 843(¶ 16) (Miss. 2005)). However, “[i]f the evidence is found to be legally insufficient, then the defendant must be discharged.”
 
 Drake v. State,
 
 800 So.2d 508, 516(1134) (Miss.2001)
 
 *683
 
 (citing
 
 May v. State,
 
 460 So.2d 778, 781 (Miss.1984)).
 

 ¶ 9. Holmes argues that his motions for a directed verdict and a JNOV were improperly denied as there was no evidence presented of sexual penetration — a necessary requirement in establishing sexual battery under section 97-3-95. Holmes bases this assertion on the fact that the tests run by the Mississippi Crime Laboratory showed no seminal fluid was present. Consequently, Holmes argues that there was insufficient evidence to support his conviction. “[Sexual] [p]enetration is the very essence of the crime of sexual battery.”
 
 Washington v. State,
 
 645 So.2d 915, 917 (Miss.1994). Sexual penetration is defined in Mississippi Code Annotated’ section 97-3-97(a) (Rev.20Ó6) as “cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings of another person’s body by any part of a person’s body, and insertion of any object into the genital or anal openings of another person’s body.” Holmes notes that the only evidence presented to prove the element of sexual penetration was the testimony of B.L., an eyewitness.
 

 ¶ 10. While penetration must be proved beyond a reasonable doubt, “it need not be proved in any particular form of words, and circumstantial evidence may suffice.”
 
 Lang v. State,
 
 230 Miss. 147, 158-59, 87 So.2d 265, 268 (1956). B.L. stated repeatedly at trial that Holmes was “having sex” with her daughter, physically demonstrated for the jury the positions in which she found Holmes and her daughter, and described the demeanor of both R.L. and Holmes. Based on this testimony, the jury could have found beyond a reasonable doubt that sexual penetration was occurring at the moment B.L. walked in on R.L. and Holmes. Additionally, although R.L. was unable to explain what had happened to her due to her mental status, the nurse who examined her at the hospital stated that R.L. pointed to her rectum when explaining where Holmes had touched her. Even the employee from the crime lab, who was Holmes’s witness, testified that it was possible for sexual penetration to have occurred without the presence of seminal fluid.
 

 ¶ 11. Accordingly, we find that the trial court did not err in denying Holmes’s motion for a directed verdict, request for a peremptory instruction, and motion for a JNOV. We, therefore, affirm Holmes’s conviction and sentence.
 

 ¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF CLAY COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY YEARS AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE AND TO PAY A FINE OF $10,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CLAY COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ, IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
 

 [1]
 

 . Due to the sensitive nature of the case, the victim and her mother are identified only by their initials.