IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA 18-1036

 Filed: 20 August 2019

Guilford County, No. 17 JB 37

IN THE MATTER OF: J.D.

 Appeal by defendant from orders entered 13 November 2017 and

23 January 2018 by Judge Tabatha P. Holliday in Guilford County District Court.

Heard in the Court of Appeals 13 March 2019.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General
 Stephanie A. Brennan, for the State

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Amanda S.
 Zimmer, for defendant.

 ARROWOOD, Judge.

 Defendant J.D. (“Jeremy1”) appeals from an order finding him delinquent for

the offenses of first-degree forcible sexual offense and second-degree sexual

exploitation of a minor. For the following reasons, we reverse.

 I. Background

 1 Pursuant to Rule 42 of the North Carolina Rules of Appellate Procedure, a pseudonym is
used to protect the anonymity of each juvenile discussed in this case. N.C.R. App. P. 42 (2019).
 IN RE: J.D.

 Opinion of the Court

 This case arises from sexual misconduct by Jeremy towards a friend who was

attending a sleepover at his house. The evidence tended to show as follows: On

18 November 2016, Jeremy hosted a sleepover for a friend, Zane. Two of Jeremy’s

cousins, Carl and Dan, also attended. All four boys were of middle-school age. During

the night, Zane awoke to find his pants pulled down and Jeremy behind him. He

believed someone was holding down his legs. Zane testified that he “felt [Jeremy’s]

privates on [his] butt” but that he did not feel them “go into [his] butt.” Dan filmed

much of the incident. In the video Jeremy can be heard saying “[Dan], do not record

this.” The video eventually ended up on Facebook.

 A juvenile petition was filed against Jeremy based on the incident. A hearing

on the matter was held in November 2017. Among the evidence presented were

statements to the police from Dan and Carl, neither of whom testified at trial.

Jeremy’s motions to dismiss at the close of the State’s evidence and at the close of all

evidence were denied. Following the hearing, the trial court entered a written order

adjudicating Jeremy delinquent based on the determination that Jeremy had

committed first-degree forcible sexual offense for the assault and second-degree

exploitation of a minor for his role in the recording of the assault.

 The court, however, continued disposition until Jeremy could be assessed by

the Children’s Hope Alliance (CHA). The CHA report made numerous findings about

 -2-
 IN RE: J.D.

 Opinion of the Court

Jeremy, including that his risk factors for sexually harmful behaviors were in the low

to low moderate range. The court counselor recommended a level 2 disposition

 Before the disposition hearing began, Jeremy admitted to an attempted

larceny of a bicycle. On 23 January 2018, after considering Jeremy’s assessments

and his admission to larceny, the trial court entered an order punishing Jeremy at

level 3 and committing him to a Youth Detention Center (YDC) indefinitely. Jeremy

appealed and requested his release pending disposition of the appeal. A hearing was

held on 20 February 2018 on the question of his release. The trial court entered an

order concluding Jeremy would remain in YDC.

 II. Discussion

 Defendant argues the trial court erred by: (1) denying his motion to dismiss

the second-degree sexual exploitation of a minor charge, (2) denying his motion to

dismiss the first-degree forcible sexual offense charge, (3) accepting his admission to

attempted larceny when there was an insufficient factual basis, (4) violating the

statutory mandate to protect his confrontation right, and (5) failing to include

findings and conclusions that a level 3 disposition was appropriate in the disposition

order and committing him to YDC pending the outcome of the appeal without finding

compelling reasons for the confinement. We address each of these issues in turn.

 1. Second-Degree Sexual Exploitation of a Minor

 The trial court found defendant guilty of second-degree sexual exploitation of

 -3-
 IN RE: J.D.

 Opinion of the Court

a minor. We find that the trial court erred in denying the motion to dismiss because

the evidence was insufficient to support this charge as a matter of law.

 Whether the trial court erred in denying a motion to dismiss is reviewed de

novo. In re A.N.C., 225 N.C. App. 315, 324, 750 S.E.2d 835, 841 (2013). In order to

prevail on a motion to dismiss in a juvenile matter, the State must offer “substantial

evidence of each of the material elements of the offense alleged.” In re Eller, 331 N.C.

714, 717, 417 S.E.2d 479, 481 (1992). Taking the evidence in the light most favorable

to the State, as we are required to do, In re A.W., 209 N.C. App 596, 599, 706 S.E.2d

305, 307 (2011), evidence must be “sufficient to raise more than a suspicion or

possibility of the respondent’s guilt.” In re Walker, 83 N.C. App. 46, 48, 348 S.E.2d

823, 824 (1986) (citation omitted).

 Second-degree sexual exploitation of a minor requires evidence that the

defendant knowingly “film[ed]” or “[d]istribut[ed] . . . material that contains a visual

representation of a minor engaged in sexual activity.” N.C. Gen. Stat. § 14-

190.17 (2017) (emphasis added). “[T]he common thread running through the conduct

statutorily defined as second-degree sexual offense [is] that the defendant [took] an

active role in the production or distribution of child pornography without directly

facilitating the involvement of the child victim in the activities depicted in the

material in question.” State v. Fletcher, 370 N.C. 313, 321, 807 S.E.2d 528, 535 (2017)

(emphasis added).

 -4-
 IN RE: J.D.

 Opinion of the Court

 The State argues that the trial court properly concluded that Jeremy and Dan

were acting in concert in regards to the filming of the incident and relies on State v.

Joyner, 297 N.C. 349, 255 S.E.2d 390 (1979), which found that:

 [i]t is not, therefore, necessary for a defendant to do any
 particular act constituting at least part of a crime in order
 to be convicted of that crime under the concerted action
 principle so long as he is present at the scene of the crime
 and the evidence is sufficient to show he is acting together
 with another who does the acts necessary to constitute the
 crime pursuant to a common plan or purpose to commit the
 crime.

Id. at 357, 255 S.E.2d at 395.

 The State contends the evidence shows that the boys’ common plan or purpose

was to humiliate the victim. There is nothing in the record to support this. In fact,

from the evidence, it is clear that Jeremy does not want to be filmed, as he explicitly

tells Dan to stop recording. Although he was in the video, Jeremy was being filmed

against his will. “Mere presence at the scene of a crime is not itself a crime, absent

at least some sharing of criminal intent.” State v. Holloway, __ N.C. App. __, __, 793

S.E.2d 766, 774 (2016) (citation omitted), writ denied, discretionary review denied,

369 N.C. 571, 798 S.E.2d 525 (2017). Furthermore, there was no evidence presented

that Jeremy wished for this video to be made or that he was the one who distributed

it.

 Because there was no evidence that Jeremy took an active role in the

production or distribution of the video, the trial court erred in denying Jeremy’s

 -5-
 IN RE: J.D.

 Opinion of the Court

motion to dismiss the charge of second-degree sexual exploitation of a minor. Jeremy’s

adjudication for this charge should be vacated.

 2. First-Degree Forcible Sexual Offense

 In order to meet its burden to convict a defendant of first-degree sexual offense

the State must show that defendant (1) “engage[d] in a sexual act with another person

by force and against the will of the other person,” and (2) the existence of at least one

of three additional factors. See N.C. Gen. Stat. § 14-27.26 (2017). Because the

evidence is not sufficient to show that Jeremy engaged in a “sexual act” with Zane,

we need not reach the additional factors.

 A “sexual act” is defined as “[c]unnilingus, fellatio, analingus, or anal

intercourse[.]” In order to have a sexual act there must be “penetration, however

slight by any object into the genital or anal opening of another person’s body.” N.C.

Gen. Stat. § 14-27.20(4) (2017). On the other hand, “sexual contact” is defined as the

(i) “[t]ouching the sexual organ, anus, breast, groin, or buttocks of any person,” (ii)

“[a] person touching another person with their own sexual organ, anus, breast, groin,

or buttocks . . .” N.C. Gen. Stat §14-27.20(5) (2017).

 At trial, Zane denied that anal intercourse occurred. Zane testified that he

only “felt [defendant’s] privates on [his] butt” but, when asked if he felt defendant’s

privates go into his butt, however slightly, he responded “[n]ot that I know of.”

Furthermore, the prosecutor admitted at trial that, “there was not evidence of

 -6-
 IN RE: J.D.

 Opinion of the Court

penetration.”

 This Court has found that a totality of the evidence, including substantial

evidence of penetration, along with the victim’s ambiguous statement that

penetration may have occurred, is sufficient for a finding that penetration did occur.

See State v. Sprouse, 217 N.C. App. 230, 237, 719 S.E.2d 234, 240 (2011); State v.

Estes, 99 N.C. App. 312, 316, 393 S.E.2d 158, 160 (1990). However, in the instant

case, the victim’s statement is not ambiguous. Zane specifically states in his

testimony that penetration did not occur. Thus, the State has failed to prove

penetration, the central element of this crime.

 To support its contention that intercourse occurred, the State relies upon the

video taken by Dan. This video shows no more than two boys engaged in “sexual

contact” not a “sexual act.” While it may have been sufficient to have shown that

defendant engaged in sexual contact by force against the will of Zane, which is sexual

battery in violation of N.C. Gen. Stat. §14-27.33 (2017), it does not show a sexual act

necessary to prove forcible sexual assault.

 Given Zane’s testimony that no sexual penetration occurred, this case is

similar to State v. Hicks, 319 N.C. 84, 90, 352 S.E.2d 424, 427 (1987) where our

Supreme Court reversed a sexual offense conviction, given the ambiguity of the

victim’s testimony as to whether anal intercourse had occurred. The dissent chooses

to ignore Zane’s denial of penetration and argues that, when taking the evidence in

 -7-
 IN RE: J.D.

 Opinion of the Court

the light most favorable to the State, the trial court did not err. The fatal flaw in the

dissent’s argument is that circumstantial evidence cannot be used to overcome a

victim’s direct testimony that no penetration occurred.

 Because there was not substantial evidence for anal intercourse, even when

looking at the evidence in the light most favorable to the State, the trial court erred

in denying defendant’s motion to dismiss the charge of first-degree sexual offense.

 3. Attempted Larceny Admission

 The trial court found that there was a sufficient factual basis to support

defendant’s admission to attempted larceny. We disagree.

 The trial court must determine that there is a sufficient factual basis for a

juvenile’s admission of guilt before accepting the admission, and this factual basis

may be based on statements presented by the attorneys. N.C. Gen. Stat. § 7B-2407(c)

(2017); In re C.L., 217 N.C. App. 109, 114, 719 S.E.2d 132, 135 (2011). This court has

found that if the State fails to provide information in compliance with

N.C. Gen. Stat. § 7B-2407(c) then the juvenile’s admission of guilt must be vacated.

In re D.C., 191 N.C. App. 246, 248, 662 S.E.2d 570, 572 (2008).

 Attempted larceny requires proof that the defendant took affirmative steps, but

did not succeed, to take another’s property with no intent to return it. See State v.

Weaver, 123 N.C. App. 276, 287 473 S.E.2d 362, 369 (1996) (setting forth the elements

of attempted larceny).

 -8-
 IN RE: J.D.

 Opinion of the Court

 The facts presented at trial do not support Jeremy’s admission of guilt. The

bicycle was stolen by two black males. Jeremy, a black male himself, was later found

by officers biking down the road with two others who also matched the description.

He was described by the prosecutor as “kind of off on his own” from the other two.

When asked to stop by the officers, of the three, only Jeremy stopped. Jeremy told

officers that he had not stolen the bicycle, that he knew who had, and admitted to

having bolt cutters in his back pack.

 There was not a showing of the requisite intent that defendant intended to

steal, or assist others in stealing, the bicycle. Defendant’s counsel argued that

defendant loaned someone his book bag, who then placed bolt cutters inside it and

left to “do their deed.” The State presented no evidence, except to mention that “I

believe the property was recovered.” It is unclear where or from whom the bicycle

was recovered.

 Because the State failed to present sufficient evidence that defendant

attempted to steal the bicycle, the trial court erred in accepting Jeremy’s admission

of attempted larceny. The adjudication for attempted larceny should be vacated.

 4. Defendant’s Right of Confrontation

 In addition to the video of the incident and testimony from Jeremy and Zane,

the State offered out-of-court statements from Dan and Carl, statements which

tended to support the charges against Jeremy. These statements are part of the

 -9-
 IN RE: J.D.

 Opinion of the Court

circumstantial evidence which the dissent relies upon to try to overcome the victim’s

testimony that no penetration occurred. Jeremy argues that these statements were

admitted in violation of his constitutional right to confront and cross-examine

witnesses.2 We agree and conclude that the error was prejudicial.

 Errors affecting constitutional rights are presumed to be prejudicial and

warrant a new trial unless the State can prove that the error was harmless beyond a

reasonable doubt. State v. Knight, 245 N.C. App. 532, 548, 785 S.E.2d 324, 336 (2016)

(citation omitted), aff’d as modified, 369 N.C. 640, 799 S.E.2d 603 (2017).

 The State argues that the evidence was overwhelming where there was a

videotape of the assault and testimony from the victim and defendant. However, the

evidence presented at trial was not overwhelming. Zane denied that any penetration

occurred and the video evidence was, at most, ambiguous. In order to attempt to

overcome Zane’s testimony, the State referenced Dan and Carl’s statements

numerous times in its closing argument (e.g., “all [Dan] know[s] about the video is

 2 The State contends that this issue is not properly before us on appeal, as Jeremy failed to
object to the entry of Dan and Carl’s statements at trial. It is true that “[t]he constitutional right of
an accused to be confronted by the witnesses against him is a personal privilege which he may waive
expressly or by a failure to assert it in apt time even in a capital case.” State v. Braswell, 312 N.C.
553, 558, 324 S.E.2d 241, 246 (1985) (citation and emphasis removed).
 However, Section 7B-2405 of our General Statutes provides that our courts are to protect the
rights of a juvenile defendant during a delinquency hearing, and has been considered a “statutory
mandate.” Matter of J.B., __ N.C. App. __, __, 820 S.E.2d 369, 371 (2018) (citations omitted). “The
plain language of N.C. Gen. Stat. § 7B-2405 places an affirmative duty on the trial court to protect the
rights delineated therein during a juvenile delinquency adjudication.” In re J.R.V., 212 N.C. App. 205,
210, 710 S.E.2d 411, 414 (2011). And, “when a trial court acts contrary to a statutory mandate and a
defendant is prejudiced thereby, the right to appeal the court’s action is preserved, notwithstanding
defendant’s failure to object at trial.” State v. Ashe, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985).
Therefore, this issue is properly before this Court.

 - 10 -
 IN RE: J.D.

 Opinion of the Court

that they was doing it;” “[Dan] showed a clear understanding of what he was seeing.

He says, sex. He’s asked, do you know what sex is? And he explains it, basically male

penetrate another person, basically”). Even though Dan and Carl both stated they

thought Zane and Jeremy were having sex, they also both stated that Zane consented,

that it was Zane’s idea, and that he pulled his own pants down. It cannot be said that

this additional evidence that penetration occurred was not prejudicial to defendant’s

defense. Therefore, the State has failed to prove this testimony was harmless beyond

a reasonable doubt.

 5. Sentencing Errors

 Although we find that the judgment must be reversed because of the errors set

forth above, and therefore the disposition vacated, we feel it is also important to

address the errors made by the trial court during the sentencing phase of the case.

 i. Level 3 Disposition

 While the State argues that the trial court sufficiently found each of the five

statutorily required factors from N.C. Gen. Stat. § 7B-2501(c) to support a level 3

disposition, we find that there are not adequate written reasons in the Disposition

and Commitment Order to support its findings.

 Under Section 7B-2501, the trial court is required to make findings of fact as to a

number of enumerated factors regarding the best interests of the delinquent child

and the protection of the public, as follows:

 - 11 -
 IN RE: J.D.

 Opinion of the Court

 (1) The seriousness of the offense;
 (2) The need to hold the juvenile accountable;
 (3) The importance of protecting the public safety;
 (4) The degree of culpability indicated by the circumstances
 of the particular case; and
 (5) The rehabilitative and treatment needs of the juvenile
 indicated by a risk and needs assessment.

N.C. Gen. Stat. § 7B-2501(c) (2017). “[A] trial court must consider each of the factors

in Section 7B-2501(c) when entering a dispositional order.” Matter of I.W.P., __ N.C.

App. __, __, 815 S.E.2d 696, 704 (2018). Whether the trial court properly complied

with its statutory duty to make findings is a question of law to be reviewed de novo.

See In re G.C., 230 N.C. App. 511, 516, 750 S.E.2d 548, 551 (2013) (citations omitted).

 CHA found that Jeremy’s risk factors for sexually harmful behaviors are in the

low to low moderate range. Jeremy’s evaluation from the court counselor indicated

that he “is a low/moderate risk for reoffending.” The counselor recommended a level

2 disposition. The recommended terms of level 2 include, but are not limited to:

cooperating with the TASK program and group therapy, having a curfew, not

participating in sleepovers, having electronic devices monitored, not being used as a

babysitter, maintaining passing grades at school, and not having contact with the

victim. These suggested terms would have effectively satisfied the requirements of

N.C. Gen. Stat. § 7B-2501(c).

 The trial court found that the “[j]uvenile requires personal accountability for

his actions [and] . . . requires more structure.” It is unclear how the trial court

 - 12 -
 IN RE: J.D.

 Opinion of the Court

reaches this conclusion as to why defendant must be committed at the YDC as his

own home can provide him accountability and structure. The report from CHA

indicated that defendant had a stable home life. The report further notes that

defendant’s family relationships are “noted to be ‘close’ and supportive” and that

there was no reported history of Department of Social Services (DSS) visits or

experiences with physical or sexual abuse.

 The trial court also found that defendant’s “level of regulation in the short term

is low.” CHA had Jeremy complete the Adolescent Self-Regulatory Inventory (ASRI),

which indicated he had “some level” of self-regulation, “some level” of short-term self-

regulation and a “moderate level” of long-term self-regulation. The lowest score for

short-term self-regulation is 13, the middle score is 39, and 65 is the highest score.

Jeremy scored a 36, which is much closer to the middle score than the lowest score.

The trial court did not indicate why any potential issues with Jeremy’s self-regulation

could only be corrected by sending defendant to YDC instead of the recommended

counseling sessions.

 The trial court further found that “[j]uveniles [sic] YDC commitment and

treatment will protect the public and provide juvenile the opportunity to mature

regarding opportunistic and impulsive behavior.” However, the order also noted that

if there is not sex-specific individual or group therapy available at the YDC then he

will complete it during his post-release supervision period. Having access to this

 - 13 -
 IN RE: J.D.

 Opinion of the Court

therapy is essential towards the goal of N.C. Gen. Stat. § 7B-2501(c) to protect the

public and meet the needs and best interests of defendant. It would be more

appropriate to ensure that defendant received this counseling now, as opposed to

when he is released from YDC.

 This Court has stated it:

 cannot overemphasize the importance of the intake
 counselor’s evaluation in cases involving juveniles alleged
 to be delinquent or undisciplined. The role of an intake
 counselor is to ensure that the needs and limitations of the
 juveniles and the concern for the protection of public safety
 have been objectively balanced before a juvenile petition is
 filed initiating court action.

In re Register, 84 N.C. App. 336, 346, 352 S.E.2d 889, 894-95 (1987).

 Furthermore, while the State attempts to reconcile the order’s findings with

the requirements of N.C. Gen. Stat. § 7B-2501(c), the trial court should have

adequately explained its own reasoning.

 Effective appellate review of an order entered by a trial
 court sitting without a jury is largely dependent upon the
 specificity by which the order’s rationale is articulated.
 Evidence must support findings; findings must support
 conclusions; conclusions must support the judgment. Each
 step of the progression must be taken by the trial judge, in
 logical sequence; each link in the chain of reasoning must
 appear in the order itself. Where there is a gap, it cannot
 be determined on appeal whether the trial court correctly
 exercised its function to find the facts and apply the law
 thereto.

Coble v. Coble, 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980).

 - 14 -
 IN RE: J.D.

 Opinion of the Court

 Here, when taking into account the evaluations by the court counselor and

CHA, the trial court failed to effectively explain its decision to ignore their

evaluations and instead commit defendant to YDC, and it fails to further explain how

its findings satisfied all of the factors required by N.C. Gen. Stat. § 7B-2501(c).

 ii. Confinement Pending the Outcome of this Appeal3

 The State contends that the trial court did not err because it stated compelling

reasons for its denial. However, the trial court did not state its own reasons for its

denial and instead referenced reasons given by defense counsel and the State.

 Pending disposition of an appeal, the release of the
 juvenile, with or without conditions, should issue in every
 case unless the court orders otherwise. For compelling
 reasons which must be stated in writing, the court may
 enter a temporary order affecting the custody or placement
 of the juvenile as the court finds to be in the best interests
 of the juvenile or the State.

N.C. Gen. Stat. § 7B-2605 (emphasis added).

 The Appellate Entries form filed on 22 February 2018 did not list anything

under “[c]ompelling reasons release is denied.” The court then issued a separate

 3 The State contends that this issue is both not properly before us and also moot upon
resolution of Jeremy’s appeal. It is true that Jeremy has not appealed the order denying his release
pending appeal, but our Court has oft reviewed this issue without a separate appeal. See In re
J.L.B.M., 176 N.C. App. 613, 628, 627 S.E.2d 239, 249 (2006); In re Bass, 77 N.C. App. 110, 116-17,
334 S.E.2d 779, 782-83 (1985). In the same respect, though his appeal will no longer be pending upon
issuance of this opinion, our Court has repeatedly chosen to address this issue despite similar
circumstances. See In re J.J., Jr., 216 N.C. App. 366, 376, 717 S.E.2d 59, 66 (2011) (vacating an
insufficient order despite “the likelihood that the passage of time may have rendered the issue of [the]
juvenile’s custody pending appeal moot”) (quoting In re Lineberry, 154 N.C. App. 246, 256, 572 S.E.2d
229, 236 (2002); In re J.L.B.M., 176 N.C. App. at 628, 627 S.E.2d at 249 (citation omitted)). In the
interest of judicial economy, we reach the merits of this claim in the present appeal.

 - 15 -
 IN RE: J.D.

 Opinion of the Court

order with Findings of Fact and Conclusions of Law about the matter on

19 March 2018. In pertinent part, the Findings of Fact are:

 2. That the defense Attorney, Marcus Jackson, contends
 that the juvenile may be served by being home and
 under house arrest along with other conditions pending
 appeal.

 3. That the State has raised issues of lack of structure in
 the home and continued delinquent behavior after being
 charged with a B1 felony. That the juvenile has been
 provided treatment as a result of the adjudication and
 the Youth Development Center program.

 “The trial court may not simply recite allegations, but must through processes

of logical reasoning from the evidentiary facts find the ultimate facts essential to

support the conclusions of law.” In re Harton, 156 N.C. App. 655, 660, 577 S.E.2d

334, 337 (2003) (citations and internal quotation marks omitted) (finding that

“stating a single evidentiary fact and adopting DSS and guardian ad litem reports”

are not “specific ultimate facts”).

 In the instant case, there were no compelling reasons stated on the Appellate

Entries form. There were supporting reasons among the Findings of Facts on the

subsequent order, but they were phrased as contentions of defense counsel and the

State. The trial court did not list independent compelling reasons on either the

Appellate Entries form or the order, thus violating the provisions of N.C. Gen. Stat.

§ 7B-2605, and, as such, the trial court erred by committing defendant to YDC

pending the outcome of this appeal. In this case, where we have reversed the

 - 16 -
 IN RE: J.D.

 Opinion of the Court

determination of delinquency, it is especially disturbing that the trial court ignored

the requirements of the statute thus causing the juvenile to be held in detention for

a period of 17 months when his convictions were improper.

 III. Conclusion

 For all the foregoing reasons, we reverse this case and remand this matter to

the district court.

 REVERSED AND REMANDED.

 Judge BRYANT concurs

 Judge DILLON dissents by separate opinion.

 - 17 -
 No. COA18-1036 – In re J.D.

 DILLON, Judge, dissenting.

 This appeal is from an order by the trial court adjudicating Jeremy delinquent

based on the trial court’s finding that Jeremy committed first-degree forcible sexual

offense and second-degree sexual exploitation of a minor.

 The evidence before the trial court was conflicting. To be sure, there was

strong evidence suggesting that Jeremy did not commit these offenses. However, in

a juvenile delinquency proceeding, it is the trial court judge – and not the judges on

our Court – who resolves any conflicts in the evidence. I conclude that the evidence

was sufficient to support the trial court’s findings and its ultimate order. My vote,

therefore, is to affirm the order of the trial court.

 I. Summary of Evidence

 A delinquency petition was filed against Jeremy, based on a sexual encounter

he had with another boy, Zane, during a sleepover. Two of Jeremy’s cousins, Carl

and Dan, also attended the sleepover. Dan recorded a portion of the sexual encounter

on a cellphone, a recording which was subsequently uploaded to the internet.

 Based on the evidence presented during the adjudication phase, the trial court

essentially found that Jeremy penetrated Zane’s anal opening with his penis, at least

slightly; with some degree of force and against Zane’s will; while being aided and
 IN RE J.D.

 DILLON, J., dissenting.

abetted by Carl and/or Dan; and that he participated in the recording and/or

distribution of the video.

 Most of the arguments on appeal concern whether there was sufficient

evidence that Jeremy committed the offenses. A summary of the evidence is as

follows:

 A. The Video

 The State offered Dan’s cellphone recording into evidence. The video lasts less

than a minute. For the entire recording, Jeremy and Zane are seen with their pants

down; Zane is slumped over a piece of furniture; Jeremy is behind Zane; the front of

Jeremy’s pelvic area (including his penis) is pressed against Zane’s buttocks; and

Jeremy is engaged in a constant thrusting motion into Zane’s buttocks.

 In the video, Jeremy is seen turning his face towards Dan’s cellphone and

stating, “[Dan], don’t record this.” Dan responds in a joking voice that he is not

recording, to which Jeremy states, “Yeah, right,” in a sarcastic tone suggesting that

he knows that Dan is recording. In any event, it appears that the cellphone was being

held up by Dan where Jeremy could see it.

 Jeremy then turns his head back towards the back of Zane’s head. He

continues his thrusting motion and begins to pull at the back of Zane’s head and hair.

Zane, whose eyes are open the entire time and who has otherwise been rather quiet

and passive while Jeremy is thrusting, begins to show and express discomfort.

 2
 IN RE J.D.

 DILLON, J., dissenting.

 At the end of the video, Jeremy turns his face back towards Dan and the

cellphone and gives a “thumbs up” gesture, as he continues his thrusting motion. The

video then ends.

 B. Zane’s Testimony

 Zane testified at the hearing as follows:

 He was asleep. He awoke to discover himself on his knees slumped over a piece

of furniture, his pants were down, and Jeremy was thrusting into his bare buttocks.

He felt someone else holding down the bottom of his legs, restraining his movements.

He could feel Jeremy’s penis in his buttocks but did not believe that Jeremy’s penis

penetrated his anal opening. Once he fully realized what was happening to him, he

struggled and was able to push Jeremy off of him. Shortly thereafter, he, Jeremy,

and the other boys went to sleep. He reported the incident sometime later after the

video had been uploaded to the internet.

 C. Jeremy’s Pre-trial Statement

 Jeremy gave a statement during the investigation of the matter. He stated

that the entire encounter was consensual. He described the encounter as

“intercourse.” He stated that he had a partial erection and that he could feel his penis

pressing against Zane’s anal opening as he was thrusting, but did not believe that his

penis actually penetrated Zane’s anus.

 D. Dan and Carl’s Pre-trial Statements

 3
 IN RE J.D.

 DILLON, J., dissenting.

 Dan and Carl were each interviewed by investigators prior to the hearing.

Their recorded interviews were offered into evidence by the State without objection.

 Both testified that Zane had consented to the sexual encounter, that it was

Zane’s idea, and that Zane pulled his own pants down. Both stated that they were

uncomfortable about what was happening. Dan stated he began recording the

encounter because he thought Jeremy and Zane were just joking around. Carl stated

that he stood off in the corner because he felt uncomfortable. Both stated that they

thought Jeremy and Zane were having “sex.” Dan stated that he understood that

“sex” included “penetration.” However, neither witness stated that he was actually

able to see exactly where Jeremy’s penis was in relation to Zane’s anal opening.

 Both described that they all went to sleep after the encounter.

 II. Analysis

 Jeremy makes a number of arguments on appeal contesting the trial court’s

order. I address each in turn.

 A. Sufficiency of the Evidence

 Jeremy argues, and the majority agrees, that there was insufficient evidence

that he engaged in the criminal conduct alleged in the petition.

 In determining whether there was sufficient evidence, our Court must view the

evidence “in the light most favorable to the State.” In re Eller, 331 N.C. 714, 717, 417

S.E.2d 479, 481 (1992) (emphasis added). There was certainly conflicting evidence.

 4
 IN RE J.D.

 DILLON, J., dissenting.

But viewing the evidence in the light most favorable to the State, I conclude that

there was sufficient evidence from which the trial court judge could find that Jeremy

committed these offenses, as explained below.

 1. First-Degree Forcible Sexual Offense

 To prove first-degree forcible sexual offense, the State must prove (a) that the

defendant “engage[d] in a sexual act with another person,” (b) “by force and against

the will of the other person,” and (c) that there existed at least one of three certain

aggravating factors. N.C. Gen. Stat. § 14-27.26 (2015).

 a. Evidence of a Sexual Act

 The petition in this case alleges that Jeremy committed “anal intercourse[]”,

which is a “sexual act” defined in Section 14-27.20(4) of our General Statutes.

N.C. Gen. Stat. § 14-27.20(4) (2015) (defining “[s]exual act” as including “anal

intercourse”).

 Jeremy argues, and the majority agrees, that there was insufficient evidence

that Jeremy’s penis actually penetrated Zane’s anal opening. Indeed, “[a]nal

intercourse requires penetration of the anal opening of the victim by the [defendant’s]

penis[.]” State v. DeLeonardo, 315 N.C. 762, 764, 340 S.E.2d 350, 353 (1986)

(emphasis added). However, the State need not prove that total penetration occurred;

 5
 IN RE J.D.

 DILLON, J., dissenting.

penetration can be very slight to satisfy this element. Id.; N.C. Gen. Stat. § 14-27.36

(2015) (“Penetration, however slight, is . . . anal intercourse.”)4.

 There was certainly some evidence that penetration did not occur. For

instance, Zane himself testified that he did not believe that Jeremy penetrated him.

However, Zane also stated that he was not fully awake during much of the assault.

 In any event, there was other evidence from which a fact-finder could find that

slight penetration did occur, namely the cellphone video itself and Jeremy’s own

statement.

 Regarding the cellphone video, it admittedly does not offer direct evidence of

penetration, as the exact position of Jeremy’s penis is obscured by his pelvis pressed

against Zane’s buttocks. The video, though, does constitute sufficient circumstantial

evidence of penetration. Specifically, it shows the position and proximity of Jeremy

to Zane and his constant thrusting motion towards Zane’s anus. Our Supreme Court

has held that penetration can be proven by circumstantial evidence alone. See, e.g.,

State v. Robinson, 310 N.C. 530, 534, 313 S.E.2d 571, 574 (1984) (holding that

penetration in a rape prosecution can be proven either by direct testimony “or by

circumstantial evidence”); State v. Santiago, 148 N.C. App. 62, 70, 557 S.E.2d 601,

607 (2001) (holding that “circumstantial evidence may be utilized” to prove

penetration). Indeed, it is axiomatic in jurisdictions across our country that

 4 This section was previously codified at N.C. Gen. Stat. § 14-27.10. Recodified as cited
effective 1 December 2015, after the events of this case transpired.

 6
 IN RE J.D.

 DILLON, J., dissenting.

“[e]vidence of the condition, position, and proximity of the parties as testified to by

eyewitnesses may afford sufficient [circumstantial] evidence of penetration” even

where a view of the genitals is obscured. 81 C.J.S. Sodomy § 11, note 42 (1977).5

Accordingly, the video itself was sufficient for the trial court to make a finding that

penetration occurred.6

 Jeremy’s own statement, itself, is evidence of penetration: he admitted that he

had a semi-erect penis; that his penis was pressing against Zane’s anus; that he was

thrusting; and he described the encounter as “intercourse.” A fact-finder could infer

 5 See Taylor v. State, 374 P.2d 786, 788-89 (Okla. Crim. App. 1962) (sustaining verdict based
on circumstantial evidence of eyewitness, recognizing that “it has been held in several jurisdictions
that the condition, position and proximity of defendants, as testified to by eyewitnesses, afford
sufficient evidence of penetration . . . since it is very seldom that penetration can be observed in cases
involving sex offenses”), citing Commonwealth v. Bowes, 74 A.2d 795 (Pa. Super. Ct. 1950), and State
v. Crayton, 116 N.W. 597 (Iowa 1908). See also Holmes v. State, 20 So.3d 681, 683 (Miss. Ct. App.
2008) (holding that testimony of eyewitness who found the defendant in a compromising position with
a minor, though not seeing the actual position of the defendant’s genitals, was sufficient to prove
penetration, stating “[w]hile penetration must be proved beyond a reasonable doubt, it need not be
proved in any particular form of words, and circumstantial evidence may suffice”); State v. Golden, 430
A.2d 433, 435-37 (R.I. 1981) (concluding that testimony of police officer that the defendant was naked
on top of victim was sufficient to prove penetration); Marshall v. State, 223 S.W.3d 74, 78 (Ark. Ct.
App. 2006); Knowlton v. State, 382 N.E.2d 1004, 1008-09 (Ind. Ct. App. 1978) (holding that eyewitness
testimony that the defendant had assumed a position appropriate for a sexual act with another, that
the defendant was close enough to the other person to be touching, that the defendant’s pants were
unzipped, and that his penis was erect was sufficient circumstantial evidence to prove penetration);
Ryan v. Commonwealth, 247 S.E.2d 698, 702 (Va. 1978) (holding that “evidence of condition, position,
and proximity of the parties . . . may afford sufficient evidence of penetration”); State v. Pratt, 116 A.2d
924, 925 (Me. 1955) (holding that “the fact of penetration may be proved by circumstantial evidence as
by the position of the parties and the like”).
 6 Our Supreme Court did hold that the circumstantial evidence in Robinson was not sufficient

to establish penetration. However, in that case, no witness actually saw the defendant and the victim
in a sexual position, but rather they were discovered unclothed after the assault. Accordingly, the
Court ruled that this circumstantial evidence was sufficient to establish something “disgusting and
degrading” was occurring, but not sufficient to establish that actual penetration of the victim’s vagina
by the defendant’s penis had occurred. Robinson, 310 N.C. at 534, 313 S.E.2d at 574.

 7
 IN RE J.D.

 DILLON, J., dissenting.

from this statement that at least the tip of Jeremy’s penis slightly penetrated Zane’s

anal opening, though his entire penis may not have penetrated.

 The trial court weighed what it saw in the video and Jeremy’s statements

against the evidence suggesting that penetration did not occur, and the trial court

found that at least slight penetration did occur. I see no error here. It is not our role

to reweigh the evidence and make a different finding.7

 b. Evidence of Force and Lack of Consent

 There was evidence that Zane had not given his consent to Jeremy’s actions

and that Jeremy used some degree of force. Specifically, Zane testified at the hearing

that the video did not depict the entire assault and that he was asleep when the

assault started. He testified that he fully awoke to Jeremy pulling on his hair while

thrusting his bare pelvis into Zane’s bare buttocks. Zane testified that he felt

someone holding his legs down as the assault was occurring. Zane testified that he

pushed Jeremy off of him soon after the recording stopped. There is nothing in the

video itself which suggests conclusively that Zane was, in fact, participating willingly.

 7 This case is different from cases like State v. Hicks, 319 N.C. 84, 352 S.E.2d 424 (1987), where
it was held that evidence of penetration was insufficient where the victim denied or was ambiguous as
to whether penetration actually occurred. Specifically, in Hicks, there was no other evidence, direct
or circumstantial, which supported a finding of penetration which could be weighed by the finder of
fact against the victim’s exculpatory statement. Id. at 90, 352 S.E.2d at 427. Hicks and similar cases
do not stand for the proposition that a victim’s denial of actual penetration is conclusive if there is
other evidence which supports a finding of penetration. Indeed, there are many reasons why a victim
might not want to admit that he was actually penetrated. Of course, where the victim has denied
actual penetration and where there is no evidence to the contrary, it is inappropriate for the fact-finder
to speculate. But where there is evidence of penetration, the fact-finder, the trial court in the present
case, is free to disbelieve the victim.

 8
 IN RE J.D.

 DILLON, J., dissenting.

And there is some evidence in the video that he was being subdued by Jeremy, as

Jeremy is seen pulling on Zane’s hair.

 Admittedly, there was strong evidence that Zane was a willing participant. For

instance, Jeremy, Carl, and Dan all stated during the investigation that the incident

was Zane’s idea and that Zane and Jeremy each pulled their own pants down.

 But, again, factual discrepancies were for the trial court, and not our Court, to

resolve. Therefore, I conclude that there was sufficient evidence to support that

Jeremy acted with force and against Zane’s will. See State v. Smith, 300 N.C. 71, 78,

265 S.E.2d 164, 169 (1980) (“Contradictions and discrepancies are for the [factfinder]

to resolve and do not warrant dismissal.”).

 c. Evidence that Jeremy was Aided and Abetted

 The petition alleges that Jeremy committed the sexual act while “aided and

abetted by one or more other persons[,]” which is an aggravating factor enumerated

in Section 14-27.26(a)(3). N.C. Gen. Stat. § 14-27.26(a)(3) (2015). The trial court so

found; and for the following reasons, I conclude that there was sufficient evidence to

support this finding.

 Aiding and abetting has been described by our Supreme Court as follows:

 A person aids when being present at the time and place he
 does some act to render aid to the actual perpetrator of the
 crime, though he takes no direct share in its commission;
 and an abettor is one who gives aid and comfort, or either
 commands, advises, instigates or encourages another to
 commit a crime.

 9
 IN RE J.D.

 DILLON, J., dissenting.

State v. Holland, 234 N.C. 354, 358, 67 S.E.2d 272, 274-75 (1951). An individual’s

mere presence during the commission of a crime, though, does not typically constitute

aiding and abetting. State v. Hoffman, 199 N.C. 328, 333, 154 S.E. 314, 316 (1930).

However, “when the bystander is a friend of the perpetrator and knows that his

presence will be regarded by the perpetrator as an encouragement and protection,

presence alone may be regarded as an encouragement.” State v. Goode, 350 N.C. 247,

260, 512 S.E.2d 414, 422 (1999).

 When viewed in the light most favorable to the State, the evidence supports an

inference that Jeremy was aided and abetted by his cousin Dan. Specifically, the

video depicts them in conversation which could be inferred as joking about the

recording being made. Further, towards the end of the video, Jeremy gives Dan a

“thumbs up” signal. A fact-finder could certainly infer from their tone and actions

that Dan and Jeremy were joking with each other during the assault and that Dan

was not simply a passive bystander, but rather a source of encouragement.

 Further, there was some evidence, though admittedly weak, from which one

could infer that Carl aided Jeremy’s assault. Specifically, Zane testified that he felt

his legs being held down by someone that he believed was not Jeremy during Jeremy’s

assault, testimony which would support a finding that Carl was holding Zane down

while Jeremy was engaged in the sexual assault.

 2. Sexual Exploitation of a Minor

 10
 IN RE J.D.

 DILLON, J., dissenting.

 Sexual exploitation of a minor requires evidence that Jeremy “record[ed]” or

“distribut[ed] . . . material that contains a visual representation of a minor engaged

in sexual activity.” N.C. Gen. Stat. § 14-190.17 (2017).

 It is undisputed that Jeremy did not personally record the incident, and there

is no direct evidence that Jeremy participated in the publishing of the recording. But

again, the evidence in the light most favorable to the State supports an inference that

Jeremy acted in concert with Dan to record the incident.

 Under the acting in concert doctrine, an individual need not personally commit

any portion of an alleged crime as long as he is (1) “present at the scene of the crime[,]”

and (2) “acts [] together with another who does the acts necessary to constitute the

crime pursuant to a common plan or purpose to commit the crime.” State v.

Joyner, 297 N.C. 349, 357, 255 S.E.2d 390, 395 (1979). Our Supreme Court has held

that a common plan or purpose may “be shown by circumstances accompanying the

unlawful act and conduct of the defendant subsequent thereto.” State v.

Westbrook, 279 N.C. 18, 42, 181 S.E.2d 572, 586 (1971). “The communication or

intent to aid, if needed, does not have to be shown by express words of the defendant

but may be inferred from his actions and from his relation to the actual perpetrators.”

State v. Sanders, 288 N.C. 285, 290-91, 218 S.E.2d 352, 357 (1975).

 Here, Jeremy was indisputably present. Though Jeremy is heard telling Dan

not to video the incident, a fact-finder could certainly infer from Jeremy’s tone and

 11
 IN RE J.D.

 DILLON, J., dissenting.

the position of the cellphone that Jeremy knew that he was being recorded and was

in approval of the recording. Jeremy’s “thumbs up” gesture at the end of the recording

can reasonably imply knowledge and approval and that he was working with Dan to

get a recording of the assault. Certainly other inferences could be made from the

evidence, but the resolution of conflicting inferences is for the trial court to sort out.

 B. Right of Confrontation

 The State offered into evidence the recordings of interviews of Carl and Dan,

Jeremy’s cousins, by investigators. Jeremy did not object. Indeed, much of their

testimony benefited Jeremy as they described the entire encounter as consensual.

However, Jeremy argues that portions of their statements were harmful to him and

that admission of these statements was in violation of his constitutional right to

confront and cross-examine witnesses against him. Specifically, Jeremy contends

that Carl and Dan provided some testimonial evidence that actual penetration by

Jeremy’s penis of Zane’s anal opening occurred.

 The State contends that this issue is not properly before us on appeal, as

Jeremy failed to object to the entry of Dan and Carl’s statements at trial.

 It is true that “[t]he constitutional right of an accused to be confronted by the

witnesses against him is a personal privilege which he may waive expressly or by a

failure to assert it in apt time even in a capital case.” Braswell, 312 N.C. at 558, 324

S.E.2d at 246 (emphasis removed).

 12
 IN RE J.D.

 DILLON, J., dissenting.

 However, Section 7B-2405 of our General Statutes provides that our courts are

to protect the rights of a juvenile defendant during a delinquency hearing and has

been considered a “statutory mandate.” Matter of J.B., ___ N.C. App. ___, ___, 820

S.E.2d 369, 371 (2018); N.C. Gen. Stat. § 7B-2405 (2015). “The plain language of N.C.

Gen. Stat. § 7B-2405 places an affirmative duty on the trial court to protect the rights

delineated therein during a juvenile delinquency adjudication.” In re J.R.V., 212 N.C.

App. 205, 210, 710 S.E.2d 411, 414 (2011). And, “when a trial court acts contrary to

a statutory mandate and a defendant is prejudiced thereby, the right to appeal the

court's action is preserved, notwithstanding defendant's failure to object at trial.”

State v. Ashe, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985). Therefore, this issue is

properly before this Court.

 Section 15A-1443 provides that when a preserved issue is based on a statute,

it is the defendant’s burden on appeal to show that there is a reasonable possibility

that, but for the error, a different result would have occurred. N.C. Gen. Stat. § 15A-

1443(a) (2015). However, where the preserved issue is based on a constitutional right,

the burden is on the State to show that the error was not harmless beyond a

reasonable doubt. N.C. Gen. Stat. § 15A-1443(b).

 Of course, some errors may be based on both a constitutional right and a

statutory right. And it could be argued that the error Jeremy complains of is

technically statutory in nature, and, therefore, Jeremy is only entitled to “reasonable

 13
 IN RE J.D.

 DILLON, J., dissenting.

possibility” review. That is, Jeremy has waived his constitutional argument by not

objecting; and, therefore, it is only Jeremy’s statutory right under Section 7B-2405

that is preserved for appellate review.

 But our jurisprudence compels us to review violations of the statutory right

under Section 7B-2405 with “harmless beyond a reasonable doubt” review, which is

otherwise reserved only for preserved constitutional errors. See In re J.B., ___ N.C.

App. ___, ___, 820 S.E.2d 369, 371 (2018) (holding that “failure to follow the statutory

mandate when conducting an adjudication hearing constitutes reversible error unless

proven to be harmless beyond a reasonable doubt”).

 But even based on the “harmless beyond a reasonable doubt” standard, I

conclude that the inclusion of Dan and Carl’s statements which suggested that

penetration occurred does not justify a new hearing. Indeed, neither boy described

in any detail that they saw Jeremy’s penis actually penetrate Zane’s anus. Dan stated

that he thought Jeremy and Zane were just joking around. Carl stated that he stood

away from the action in the corner. Rather, I am convinced that the trial court made

its finding regarding penetration based on the video itself, which provided no better

view than the view Dan and Carl had, and based on Jeremy’s own admission that he

could feel his penis press against Zane’s anal opening while he was thrusting,

something that Carl and Dan could not see from their vantage points.

 C. Attempted Larceny Admission

 14
 IN RE J.D.

 DILLON, J., dissenting.

 Sometime after the adjudication but before the disposition hearing, Jeremy

allegedly stole a bicycle. At the disposition hearing, Jeremy admitted to attempting

the theft, as he was caught with bolt cutters next to a bicycle. The trial court used

Jeremy’s admission to the attempted larceny to support its ultimate disposition.

 Jeremy argues, and the majority agrees, that there was an insufficient factual

basis to support the admission, and therefore the trial court should not have accepted

Jeremy’s admission. I disagree.

 To be sure, the trial court must determine that there is a sufficient factual

basis for a juvenile’s admission of guilt before accepting the admission, though this

factual basis may be based on statements presented by the attorneys.

N.C. Gen. Stat. § 7B-2407(c) (2017); In re C.L., 217 N.C. App. 109, 114, 719 S.E.2d

132, 135 (2011).

 Attempted larceny requires proof that the defendant took affirmative steps,

but did not succeed, to take another’s property with no intent to return it. See State

v. Weaver, 123 N.C. App. 276, 287, 473 S.E.2d 362, 369 (1996) (reciting elements of

attempted larceny).

 In this matter, the trial court heard a recitation of facts from the State

regarding Jeremy’s attempted theft of the bicycle before accepting Jeremy’s

admission of guilt. The recitation showed that two young males stole a bicycle using

bolt cutters. Jeremy was later found by police in the company of two young males

 15
 IN RE J.D.

 DILLON, J., dissenting.

matching the description of the thieves. Jeremy admitted to knowing about the theft

and was found to be in possession of the bolt cutters which were used to facilitate the

larceny. The stolen bicycle was ultimately recovered.

 I conclude that this recitation is sufficient to show that Jeremy directly

participated, or at least acted in concert, in the commission of the attempted theft of

the bicycle. Indeed, Jeremy’s attorney and his parents each stated that Jeremy was

present when the bicycle was stolen and was found in actual possession of the bolt

cutters. See State v. Agnew, 361 N.C. 333, 336, 643 S.E.2d 581, 583 (2007) (“The []

sources listed in [N.C. Gen. Stat. § 15A-1022(c)] are not exclusive, and therefore the

trial judge may consider any information properly brought to his attention.”); In re

Mecklenburg Cty., 191 N.C. App. 246, 248, 662 S.E.2d 570, 572 (2008) (acknowledging

the parallels between N.C. Gen. Stat. §§ 7B-2407 and 15A-1022).

 D. Level 3 Order

 Jeremy next makes essentially three arguments with respect to his Level 3

disposition. I address each in turn.

 1. Sufficiency of the Findings

 First, Jeremy contends that the trial court failed to make required findings of

fact as to each of the factors listed in Section 7B-2501 of our General Statutes.

Whether the trial court properly complied with its statutory duty to make findings is

 16
 IN RE J.D.

 DILLON, J., dissenting.

a question of law to be reviewed de novo. See In re G.C., 230 N.C. App. 511, 516-17,

750 S.E.2d 548, 551 (2013).

 Under Section 7B-2501, the trial court is required to make findings of fact as

to a number of enumerated factors regarding the best interests of the delinquent child

and the protection of the public, as follows:

 (1) The seriousness of the offense;
 (2) The need to hold the juvenile accountable;
 (3) The importance of protecting the public safety;
 (4) The degree of culpability indicated by the circumstances
 of the particular case; and
 (5) The rehabilitative and treatment needs of the juvenile
 indicated by a risk and needs assessment.

N.C. Gen. Stat. § 7B-2501 (2017). Further, “[t]he dispositional order shall be in

writing and shall contain appropriate findings of fact and conclusions of law.” N.C.

Gen. Stat. § 7B-2512 (2017). The trial court need not expressly track each of the

factors enumerated in Section 7B-2501; rather, it need only enter “appropriate”

findings. Matter of D.E.P., ___ N.C. App. ___, ___, 796 S.E.2d 509, 516 (2017).

 Here, the trial court checked form boxes indicating that the juvenile’s

delinquency history level was “low,” and that it considered a number of reports and

assessments submitted by the parties. It then added the following findings of fact in

a space labeled “Other Findings:”

 Juvenile was adjudicated on a B1 felony.
 Juvenile’s level of regulation in the short term is low.
 Juvenile continued to engage in delinquent behavior
 despite this pending charge (see admission to attempted

 17
 IN RE J.D.

 DILLON, J., dissenting.

 larceny, date of offense 4/7/17).
 Juvenile requires personal accountability for his actions.
 Juvenile requires more structure.
 Juveniles [sic] [Youth Detention Center] commitment and
 treatment will protect the public and provide juvenile the
 opportunity to mature regarding opportunistic and
 impulsive behavior.

 Jeremy cites a number of cases to show that the brevity of the trial court’s

findings reflects a lack of appropriate consideration for each of the required factors.

See Matter of I.W.P., ___ N.C. App. ___, ___, 815 S.E.2d 696, 704 (2018) (remanding

for further findings where the trial court considered only three of the five factors in

Section 7B-2501); In re V.M., 211 N.C. App. 389, 392, 712 S.E.2d 213, 216 (2011)

(reversing and remanding where the trial court’s order contained insufficient findings

of fact). But these cases are distinguishable from the case before us. For instance, in

In re V.M., the trial court checked boxes indicating receipt of the parties’ documents

and stated that “[t]he juvenile has been adjudicated for a violent or serious offense

and Level [3] is authorized by G.S. 7B-2508,” but left the “Other Findings” space

blank and made no additional findings of fact at all. In re V.M., 211 N.C. App. at 392,

712 S.E.2d at 215. Similarly, in Matter of I.W.P., the trial court made some findings

of fact but failed to make findings as to the seriousness of the juvenile’s offense and

his or her culpability. Matter of I.W.P., ___ N.C. App. at ___, 815 S.E.2d at 704.

 Here, though, not only did the trial court make multiple, additional findings of

fact, but each of the five factors in Section 7B-2501 are reflected in the findings. The

 18
 IN RE J.D.

 DILLON, J., dissenting.

seriousness of the juvenile’s offense is listed as commission of a B1 felony. The

findings show a high need to hold the juvenile accountable, as he continues to engage

in delinquent behavior and requires accountability and structure. The findings show

that Jeremy’s disposition will protect the public while he matures, develops personal

accountability, and is prevented from continual delinquent behaviors. Jeremy’s

culpability is described as adjudication of a violent offense for which he exhibits

concerns with personal accountability. Lastly, the order shows that the trial court

considered risks and needs assessments submitted by the parties and ultimately

determined that commitment with the Youth Detention Center (“YDC”) would

provide Jeremy an opportunity for treatment and positive growth and provide

protection for the public. I conclude that the trial court’s findings were “appropriate”

under Section 7B-2501.

 2. Sufficiency of the Evidence to Support Those Findings

 Jeremy contends that the evidence did not support the trial court’s findings. I

conclude that the evidence supported the trial court’s findings.

 Jeremy scored below the median score on an Adolescent Self-regulatory

Inventory assessment, showing that “his levels of self-regulation are less developed

in the short-term.” Further, Jeremy elected to engage in further delinquent behavior

following the sexual assault. Though reports suggested that Jeremy had adequate

supervision at home, there was evidence that Jeremy’s mother was unaware that the

 19
 IN RE J.D.

 DILLON, J., dissenting.

assault had occurred within her home until two weeks after the event, that Jeremy

was allowed to spend time with others who engaged in criminal activity, and that his

mother referred to the assault as simply “kids being kids.” Psychological testing

showed signs of immaturity, and Jeremy’s assessments concluded that his “risk

factors suggest that his referring offense behaviors were opportunistic and

impulsive.” The assessments also reflected that Jeremy only partially expressed

remorse and/or guilt for his actions. The evidence shows that removing Jeremy from

his current circumstances and committing him to the YDC would allow an

opportunity to grow and mature away from a potentially negative environment.

 3. Sufficiency of Conclusions to Support Level 3 Disposition

 Jeremy contends that he “could have received a Level 2 disposition” and that

a Level 2 disposition would have been “most appropriate in this case.”

 “The decision to impose a statutorily permissible disposition is vested in the

discretion of the juvenile court and will not be disturbed absent clear evidence that

the decision was manifestly unsupported by reason.” In re K.L.D., 210 N.C. App. 747,

749, 709 S.E.2d 409, 411 (2011); see N.C. Gen. Stat. § 7B-2506 (2017).

 Here, the trial court adjudicated Jeremy delinquent for commission of a Class

B1 felony, and the trial court found that his delinquency history level was “low.”

Class B1 felonies are considered “violent” offenses, and juveniles who commit violent

offenses with a “low” delinquency history may receive either a Level 2 or 3 disposition.

 20
 IN RE J.D.

 DILLON, J., dissenting.

N.C. Gen. Stat. §§ 7B-2508(a), (f) (2017). Therefore, it was within the trial court’s

discretion to enter a Level 3 disposition in this case. “The existence of [evidence of

Jeremy’s good behavior], although it might have supported a decision by the trial

court to impose a Level 2 disposition, does not support a conclusion that the trial

court's decision to impose a Level 3 disposition was unreasonable.” Matter of D.E.P.,

___ N.C. App. ___, ___, 796 S.E.2d 509, 516 (2017).

 E. Confinement Pending Appeal

 Upon entering his appeal, Jeremy also filed a motion requesting release from

the YDC while his appeal was pending. The trial court entered an order denying this

motion. Jeremy contends that the trial court failed to state compelling reasons for its

denial, in violation of Section 7B-2605. I disagree.8

 Section 7B-2605 of our General Statutes states that a juvenile must be released

pending appeal, unless the trial court states written, compelling reasons otherwise:

 Pending disposition of an appeal, the release of the
 juvenile, with or without conditions, should issue in every
 case unless the court orders otherwise. For compelling
 reasons which must be stated in writing, the court may

 8 The State contends that this issue is both not properly before us and also moot upon
resolution of Jeremy’s appeal. It is true that Jeremy has not appealed the order denying his release
pending appeal, but our Court has oft reviewed this issue without a separate appeal. See In re
J.L.B.M., 176 N.C. App. 613, 628, 627 S.E.2d 239, 249 (2006); In re Bass, 77 N.C. App. 110, 117, 334
S.E.2d 779, 783 (1985). In the same respect, though his appeal will no longer be pending upon issuance
of this opinion, our Court has repeatedly chosen to address this issue despite similar circumstances.
See In re J.J., Jr., 216 N.C. App. 366, 376, 717 S.E.2d 59, 66 (2011) (vacating an insufficient order
despite “the likelihood that the passage of time may have rendered the issue of [the] juvenile's custody
pending appeal moot”); In re J.L.B.M., 176 N.C. App. at 628, 627 S.E.2d at 249; In re Lineberry, 154
N.C. App. 246, 256, 572 S.E.2d 229, 236 (2002)). In the interest of judicial economy, we reach the
merits of this claim in the present appeal.

 21
 IN RE J.D.

 DILLON, J., dissenting.

 enter a temporary order affecting the custody or placement
 of the juvenile as the court finds to be in the best interests
 of the juvenile or the State.

N.C. Gen. Stat. § 7B-2605 (2017). While compelling reasons are required, the court

need not be verbose. For instance, this Court has upheld denial of release pending

appeal where the trial court simply listed that the defendant committed “first degree

sex offenses with a child.” In re J.J.D.L., 189 N.C. App. 777, 781, 659 S.E.2d 757,

760-61 (2008). Most commonly, orders denying release are vacated where the trial

court simply checks a box on a form in lieu of making any written findings at all. See

In re J.J., Jr., 216 N.C. App. at 376, 717 S.E.2d at 66.

 Here, the trial court’s order acknowledged in writing that Jeremy had a “lack

of structure in the home” and “continued delinquent behavior after being charged

with a B1 felony.” Jeremy entered an admission of guilt in regard to his subsequent

delinquent behavior following his adjudication for sexual offenses. Further, the order

decrees that Jeremy “shall remain in [YDC custody] pending appeal for . . . protection

of the public.” I conclude that the trial court’s order sufficiently noted compelling

reasons for Jeremy’s continued confinement pending his appeal.

 III. Conclusion

 My vote is to affirm the order of the trial court. While I may have made

different findings, there was evidence to support the findings that the trial court

made. Accordingly, I dissent.

 22
 IN RE J.D.

DILLON, J., dissenting.

 23